**EXHIBIT C**

PROPERTY MAP

(attached hereto)

C-1

US 298339v.2

Schedules to Asset Purchase Agreement
by and between
ARC Terminals LP
and
Dunhill Entities, L.P., Dunhill Entities GP, LLC,
Dunhill Terminals, L.P. and Dunhill Terminals GP, LLC
Dated: March 10, 2010

Schedule 1.01(a)(iv)

**Assigned Permits**

1.     **City of Mobile.**

2.     **City of Chickasaw.**

3.     **County of Mobile.**

4.     **State of Alabama.**

5.     **Chickasaw:**

    1.     Air Permit
        a.     17 individual permits

    2.     Weigh Master
        a.     Scale Certification
        b.     Lead Operators certification

    3.     DOT  Haz-Mat Registration

    4.     RCRA non expiring

    5.     Boiler Certificates

    6.     Crane load Certificate

    7.     EPA Approval letter
        a.     SPCC

    8.     USCG
        a.     Certificate of Adequacy
        b.     FRP Approval letter
        c.     Dock Approval Stamp
        d.     Letter of Alternative Compliance
            i.     for multiple barge loading w/ one pic

Schedule 1.01(a)(iv) – Page I

Case 10-01342    Doc 11-2    Filed 03/26/10    Entered 03/26/10 20:17:03    Desc Exhibit
A - Part 2    Page 2 of 82

        e.      FSP Approval Letter

9.     Business License

10.    Certificate of Occupancy (Not Issued).

6.    **Blakeley Island:**

   1.    Building Permits
       a.    Nine Building Permits
           i.      Non expiring as long as doing construction.
       b.    NPDES
           i.      Construction
           ii.     Stormwater
           iii.    Hydrostatic

   2.    Air Permits
       a.    Eight Air Permits
       b.    One Air Permit for gas up to 150,000 bbl

   3.    State of Alabama DOT
       a.    Right of way permit for new entrance

   4.    RCRA non expiring

   5.    EPA Approval letter
       a.    SPCC

   6.    USCG
       a.    Certificate of Adequacy
       b.    FRP Approval letter
       c.    Dock Operations Manual Approval Stamp
       d.    Letter of Alternative Compliance
           i.      for multiple barge loading w/ one pic
       e.    FSP Approval Letter

   7.    Business License

   8.    Certificate of Occupancy (Not Issued)

7.    **Withholding Tax Licenses/Permits:**

   1.    Ohio
   2.    Florida
   3.    Texas
   4.    Louisiana

| 5. | Mississippi |
| --- | --- |
| 6. | Alabama |
| 7. | Kentucky |
| 8. | Missouri |
| 9. | Arkansas |
| 10. | Tennessee |
| 11. | South Carolina |
| 12. | North Carolina |
| 13. | Georgia |
| 14. | Illinois |
| 15. | Pennsylvania |

## Schedule 1.01(a)(v)

### Assigned Contracts

1. See current tenants and rent roll as set forth on Schedule 3.13(b)(ii).

2. Ground Lease by and between Dunhill Terminals, L.P., as tenant, and Delta Hardwoods Corporation, as landlord, dated March 24, 2006.

3. Sublease Agreement by and between Dunhill Entities, L.P. as Landlord and Valero Marketing and Supply Company as Tenant, made effective as of January 27, 2009.

4. Agreement by and between Tetra Technologies, Inc. and a related third party beneficiary, for barge and truck loading and unloading at the Chickasaw Facility.

Case 10-01342    Doc 11-2    Filed 03/26/10    Entered 03/26/10 20:17:03    Desc Exhibit A - Part 2    Page 5 of 82

## Schedule 1.01(a)(vii)

### Deposits

1.  $25,000.00 deposit, Terminal Railway.

2.  $18,000.00 deposit, Mead Westvaco South Carolina.

3.  $30,000.00 deposit, Armbrecht Jackson LLP.

4.  See attached policy from First Insurance Funding Corp. (prepaid insurance).

5.  See attached policy from Camden Premium Finance, LLC (prepaid insurance).

6.  See attached policy from Flat Iron Capital (prepaid insurance).

**First INSURANCE FUNDING CORP.**

**COMMERCIAL PREMIUM FINANCE AGREEMENT AND DISCLOSURE STATEMENT**

Quote Number: 000000953573

| | | | |
|---|---|---|---|
| **INSURED/BORROWER** (Name and address as shown on Policy) Dunhill Terminals, L.P. | A | Total Premium | $ 255,220.00 |
| P.O. Box 1565 | B | Cash Down Payment Required | $ 44,845.00 |
| Mobile                      AL        36633-1585 | C | Unpaid Premium Balance | $ 210,375.00 |
| Telephone Number: (713) 476-9900 | D | Documentary Stamp Tax (only applicable in Florida) | $ 0.00 |
| Direct Correspondence to: Patricia Waters | E | Amount Financed (The amount of credit provided on your behalf) | $ 210,375.00 |
| AGENT or BROKER (Name and Business Address)    06375-0021 William R. Hill Insurance, Inc. | F | FINANCE CHARGE (Dollar amount the credit will cost you) | $ 4,119.60 |
| 800 Beaver Street Suite # 204 | G | Total of Payments (Amount you will have paid after making all scheduled payments) | $ 214,494.60 |
| Sewickley            PA        15143 | | **ANNUAL PERCENTAGE RATE** (Cost of your credit figured as a yearly rate) | 4.250 % |
| Telephone Number: (412) 741-4800        F:(412) 800- | | | |

PAYMENT SCHEDULE BELOW, or ☐ See Schedule Attached

| LENDER | **FIRST INSURANCE FUNDING CORP.** 450 Skokie Blvd, Suite 1000 P.O. Box 3306 Northbrook, IL 60065-3306 Telephone: (800) 837-3767 Fax: (800) 837-3700 | Number of Payments | Payments are due Monthly | Amount of Each Payment |
|---|---|---|---|---|
| | | 10 | Beginning 12/21/2009 | 21,449.46 |

**Prepayment** The insured may prepay the full amount due and receive a refund of the unearned interest as provided on page 2 of this agreement.

**Security** As security for the payments to be made, the insured assigns FIRST INSURANCE FUNDING CORP. (herein referred to as "FIRST") a security interest in return premiums, dividend payments, and certain loss payments with reference to the policies listed below. Under certain conditions, FIRST HAS THE RIGHT TO CANCEL FINANCED POLICIES as provided on page 2 of this agreement.

**Late Payment** A late charge will be imposed on any payment which is not received by FIRST within five (5) days of its due date (unless a longer grace period is specified under applicable law, in which case a late charge will be imposed on any payment not received by FIRST within such grace period). The late charge will be 5% of the overdue amount or the maximum late charge permitted by applicable law, whichever is less. The maximum late charge will be $5.00 in DE, MT, and IND.

**Contract Reference** Reference should be made to the terms of this agreement as stated below and on page 2 for information about nonpayment, default, cancellation, the right to demand immediate payment in full, and prepayment.

**SCHEDULE OF POLICIES**

| Policy Number And Prefix | Full Name of Insurance Company and Name and Address of General Agent or Company Office to Which Premium is Paid | Type of Insurance | Policy Term in Months | Effective Date MO. Day. Yr. | Policy Premiums |
|---|---|---|---|---|---|
| 53069542 | 02351-012 - National Union Fire of PA 002937 - Maclean, Oddy & Associates, Inc. | PROP [ME% 0.000 CA: 10] | 12 | 11-21-2009 | 123,750.00 |
| | | FIN TXS/FEES | | | 0.00 |
| | | ERN TXS/FEES | | | 0.00 |
| EPRN05085.500 | 02257-357 - ACE American Insurance Company 002137 - Maclean, Oddy & Associates, Inc. | PROP [ME% 0.000 CA: 10] | 12 | 11-21-2009 | 123,750.00 |
| | | FIN TXS/FEES | | | 0.00 |
| | | ERN TXS/FEES | | | 7,720.00 |

| | | | | TOTAL PREMIUMS (Record in "A") | 255,220.00 |

**NOTICE: SEE PAGE 2 FOR IMPORTANT INFORMATION**
The provisions on page 2 are incorporated by reference into all parts of this agreement.

**AGENT OR BROKER REPRESENTATIONS AND WARRANTIES:**
The undersigned Agent or broker has read the Agent/Broker Representations and Warranties on Page 2, has completed page 2 of all copies where required, and makes all such Representations and Warranties herein. Further, the undersigned agent or broker agrees to: (i) pay all reasonable attorney fees, costs and other collection costs incurred by FIRST in recovering amounts due from the agent or broker in connection with any breach of the Agent/Broker Representations and Warranties, and (ii) indemnify FIRST for any and all losses incurred as a result of any error committed by the Agent/Broker in completing or failing to complete any portion of this agreement.

**INSURED'S AGREEMENT:**
In consideration of the premium payments (the "Amount Financed" above) to be made to the above explained AGENT or BROKER of FIRST, the named insured (herein referred to as "insured") promises to pay, to the order of FIRST, the Total of Payments subject to all of the provisions set forth on both pages of this agreement.

**NOTICE TO THE INSURED:**
(1) Do not sign this agreement before you read both pages of it, or if it contains blank spaces. (2) You are entitled to a completely filled-in copy of this agreement. (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the service charge. (4) Keep your copy of this agreement to protect your legal rights.

Signature of Agent or Broker

Title                                Date

Name of Insured (Print or Type): *Dunhill Terminals, LP*

By (Signature)

Title                                Date: 12/7/09

Schedule 1.01(a)(vii) – Page 2

Schedules to Dunhill Terminals - Asset Purchase Agreement

ADDITIONAL PROVISIONS OF PREMIUM FINANCE AGREEMENT

**WARRANTY OF ACCURACY.**

**REPRESENTATION OF SOLVENCY.**

**COLLATERAL.**

**RIGHT TO CANCEL.**

**DEFAULT.**

**LATE CHARGES.**

**DISHONORED CHECK FEE.**

**PAYMENTS RECEIVED AFTER NOTICE OF CANCELLATION.**

**INSURED'S RIGHTS AFTER THE POLICIES ARE CANCELLED.**

**INTEREST DUE AFTER CANCELLATION.**

**CANCELLATION CHARGE.**

**ASSIGNMENTS.**

**COLLECTIONS AND ATTORNEY FEES.**

**PREPAYMENT.**

**AGENT AND REPORTING FORM POLICIES.**

**FINANCE CHARGE.**

**AGENT CHARGEBACK.**

**CORRECTIONS.**

**EFFECTIVE DATE.**

**GOVERNING LAW.**

**SIGNATURE AND ACKNOWLEDGMENT.**

**LIABILITY.**

AGENT OR BROKER REPRESENTATIONS AND WARRANTIES

**SIGNATURES GENUINE.**

**AUTHORIZATION/RECOGNITION.**

**POLICIES EFFECTIVE/PREMIUMS CORRECT.**

**WE INSURED HAVE THIS DOCUMENT.**

**NO INSOLVENCY.**

FOR THE SCHEDULED POLICIES, AGENT OR BROKER WARRANTS THAT:

(a)

(b)

(c)

(d)

**DEPOSIT/PROVISIONAL PREMIUMS.**

**LOSS PAYEE NAMED.**

**AUTHORIZED ISSUING AGENT.**

**AMOUNTS DUE FROM INSURED.**

| | Policy Number of Exceptions | Comments |
|---|---|---|
| (a) | | |
| (b) | | |
| (c) | | |
| (d) | | |

Schedule 1.01(a)(vii) – Page 3

Schedules to Dunhill Terminals - Asset Purchase Agreement

Originated by CAMDEN PREMIUM FINANCE, LLC INC.
Physical Address: P.O. BOX 922022
HOUSTON, TX 77292

**COMMERCIAL PREMIUM FINANCE AGREEMENT AND DISCLOSURE STATEMENT**

Quote Number: 000000905111

To Be Serviced by Broadway Premium Funding

INSURED/BORROWER (Name and address as shown on Policy)
Dunhill Terminals
Accumarine Transportation L.P Etal
7026 Katy Road

Houston          TX      77024

Telephone Number:

Direct Correspondence to:

AGENT or BROKER (Name and Business Address)   58000-0002
BOWEN, MICLETTE & BRITT AGENCY LLC

1111 NORTH LOOP WEST
SUITE 400
HOUSTON          TX      77008
Telephone Number:   (713) 960-7120
                                        F/D: 000

| | | | |
|---|---|---|---|
| A | Total Premium | $ | 180,282.00 |
| B | Cash Down Payment Required | $ | 18,537.85 |
| C | Unpaid Premium Balance | $ | 161,744.15 |
| D | Documentary Stamp Tax (only applicable in Florida) | $ | |
| E | Amount Financed (The amount of credit provided on your behalf) | $ | 161,744.15 |
| F | FINANCE CHARGE (Dollar amount credit will cost you) | $ | 5,096.50 |
| G | Total of Payments (Amount you will have paid after making all scheduled payments) | $ | 166,840.65 |
| | ANNUAL PERCENTAGE RATE (Cost of your credit figured as a yearly rate) | | 7.500 % |

PAYMENT SCHEDULE BELOW, or ☐ See Schedule Attached

| Number of Payments | Payments are due Monthly | Amount of Each Payment |
|---|---|---|
| 9 | Beginning 10/13/2009 | 18,537.85 |

LENDER
CAMDEN PREMIUM FINANCE, LLC INC.
c/o Broadway Premium Funding
1747-22 Veterans Memorial Hwy
Islandia, NY 11749

Prepayment  The insured may prepay the full amount due and receive a refund of the unearned interest as provided on page 2 of this agreement.

Security  As security for the payments to be made, the Insured assigns CAMDEN PREMIUM FINANCE, LLC INC. (herein referred to as "LENDER") a security interest in return premiums, dividend payments, and certain loss payments with reference to the policies listed below. Under certain conditions, LENDER HAS THE RIGHT TO CANCEL FINANCED POLICIES, as provided on page 2 of this agreement.

Late Payment  A late charge will be imposed on any payment which is not received by LENDER within ten (10) days of its due date (unless a longer grace period is required under applicable law, in which case a late charge will be imposed by law). This late charge will be 5% of the overdue amount, or the maximum late charge permitted by applicable law, whichever is less. The maximum late charge is $0.00 in DE, MT, and KS.

Contract Reference  Reference should be made to the terms of this agreement as stated below and on page 2 for information about nonpayment, default, cancellation, the right to demand immediate payment in full, and prepayment.

PRR: 891605  CFG: BRP-HOUSE

R2 cmpf-560003 DOD:0 EF:BILL P/F:2,044.80 SUB:FINCODEFAULT

**SCHEDULE OF POLICIES**

| Policy Number And Prefix | Full Name of Insurance Company and Name and Address of General Agent or Company Office to Which Premium is Paid | Type of Insurance | Policy Term in Months | Effective Date Mo. Day. Yr. | Policy Premiums |
|---|---|---|---|---|---|
| TBD | 02808-001 – General Star Indemnity Co 003206 – STARR MARINE AGENCY | PKG [ME%: 0.000 CX: 10] | 12 | 09-13-2009 FIN TXS/FEES ERN TXS/FEES | 45,000.00 0.00 0.00 |
| TBD | 84202-001 – Lloyds of London 002849 – Environmental Pollution Group – E P G | POLL [ME%: 0.000 CX: 10] | 12 | 09-13-2009 FIN TXS/FEES ERN TXS/FEES | 135,032.00 0.00 250.00 |
| | | | | | |
| | NOTICE: SEE PAGE 2 FOR IMPORTANT INFORMATION The provisions on page 2 are incorporated by reference and constitute a part of this agreement | | | TOTAL PREMIUMS (Record in "A") | 180,282.00 |

AGENT OR BROKER REPRESENTATIONS AND WARRANTIES
The undersigned agent or broker has read the Agent/Broker Representations and Warranties on Page 2, has completed page 2 of it (areas where required, and makes all such Representations and Warranties noted herein. Further, the undersigned agent or broker agrees to: (i) pay all reasonable attorney fees, costs, costs, and other collection costs incurred by LENDER in recovering amounts due from the Agent or Broker in connection with any breach of the Agent/Broker Representations and Warranties, LENDER (ii) indemnify LENDER for any and all losses LENDER incurs as a result of any error committed by the Agent/Broker in completing or failing to complete any portion of this agreement.

INSURED'S AGREEMENT:
In consideration of the premium payments (the "Amount Financed" above) to be made to the above captioned AGENT or BROKER or LENDER, the named Insured (herein referred to as "Insured") promised to pay, to the order of LENDER, the total of payments subject to all of the provisions set forth on both pages of this agreement.

NOTICE TO THE INSURED:
(1) Do not sign this agreement before you read both pages of it, or if it contains blank spaces. (2) You are entitled to a completely filled-in copy of this agreement. (3) Under the law you have the right to pay off in advance the full amount due and under certain conditions to obtain partial refund of the service charge. (4) Keep your copy of this agreement to protect your legal rights.

Signature of Agent or Broker

Title                    Date

FIF ST 0296

*Patricia Waters*
Name of Insured (Print or Type)

*By: Signature*
*CFO The ???*
Title                    *9/05/09*
                                    Date

**WARRANTY OF ACCURACY.** ...

**REPRESENTATION OF SOLVENCY.** ...

**COLLATERAL.** ...

**RIGHT TO CANCEL.** ...

**DEFAULT.** ...

**LATE CHARGES.** ...

**DISHONORED CHECK FEE.** ...

**PAYMENTS RECEIVED AFTER NOTICE OF CANCELLATION.** ...

**LENDER'S RIGHTS AFTER THE POLICIES ARE CANCELLED.** ...

**INTEREST DUE AFTER CANCELLATION.** ...

**RIGHT TO DEMAND IMMEDIATE PAYMENT IN FULL.** ...

**CANCELLATION CHARGE.** ...

**ASSIGNMENTS.** ...

**COLLECTIONS AND ATTORNEY FEES.** ...

**PREPAYMENT.** ...

**AUDIT AND REPORTING FORM POLICIES.** ...

**FINANCE CHARGE.** ...

**AGENT OR BROKER.** ...

**CORRECTIONS.** ...

**EFFECTIVE DATE.** ...

**GOVERNING LAW.** ...

**SIGNATURE AND ACKNOWLEDGMENT.** ...

**LIABILITY.** ...

---

**AGENT OR BROKER REPRESENTATIONS AND WARRANTIES**

**SIGNATURES GENUINE.** ...

**AUTHORIZATION/RECOGNITION.** ...

**POLICIES EFFECTIVE/PREMIUMS CORRECT.** ...

**INSURED HAS THIS DOCUMENT.** ...

**NO INSOLVENCY.** ...

**DEPOSIT/PROVISIONAL PREMIUMS.** ...

**LOSS PAYEES NAMED.** ...

**AUTHORIZED ISSUING AGENT.** ...

**AMOUNTS DUE FROM INSURED.** ...

FOR THE SCHEDULED POLICIES, AGENT OR BROKER WARRANTS THAT:

(a) No policies are Auditable, Reporting Form policies ...

(b) No policies are subject to Minimum Earned Premium ...

(c) All policies provide that unearned premiums are computed ...

(d) No policies contain provisions which prohibit cancellation ...

| | Policy Number Of Exceptions | Comments |
|---|---|---|
| (a) | | |
| (b) | | |
| (c) | | |
| (d) | | |

PIF ST 0206

Schedule 1.01(a)(vii) – Page 5

Schedules to Dunhill Terminals - Asset Purchase Agreement

Originated by: Camden Premium Finance, Inc.

**FLAT IRON**
C A P I T A L

Flatiron Capital
950 17th St. Suite 1300
Denver, CO 80202

"LENDER"

**PREMIUM FINANCE AGREEMENT**
**SECURITY AGREEMENT, DISCLOSURE STATEMENT AND LIMITED POWER OF ATTORNEY**

SEND PAYMENTS TO:
FLATIRON CAPITAL
DEPT 2105
DENVER, CO 80221-2195

CHECK APPROPRIATE BOX(S)
- ☐ PERSONAL
- ☑ COMMERCIAL
- ☐ RENEWAL

PHONE: 800-800-2367    FAX: 800-813-8428

QUOTE NUMBER  123126

| PRODUCER (Insurance Agent/Broker) NAME, ADDRESS and PHONE NUMBER | BORROWER (Insured) NAME, ADDRESS, and PHONE NUMBER | BORROWER in Bankruptcy |
|---|---|---|
| Bowen Miclette and Britt Insurance Agency LLC<br>1111 North Loop West<br>Ste 400<br>Houston, TX 77008<br>713-880-7400<br>AGENT NO. 309485 | Dunhill Terminals, Accutrans Transportation LP et al<br>7026 Old Katy Rd Ste 249<br>Houston, TX 77024<br>713-476-9900 | Chapter<br>7  11  13<br><br>BORROWER SSN/FEIN<br><br>XXXXX |

**1. SCHEDULE OF FINANCED POLICIES**

| NAME OF INSURANCE COMPANY AND GENERAL AGENT | TYPE OF POLICY | POLICY NUMBER | EFFECTIVE DATE | MIN EARNED (%) | SUBJECT TO AUDIT? | POLICY TERM (months) | PREMIUM (1) FIN TAX/FEES (2) NON-FIN TAX/FEES (3) |
|---|---|---|---|---|---|---|---|
| 310948  Starr Indemnity & Liability Company | HULL | | 9/13/2009 | 0% | | 12 | $180,630.00 |
| 306436  Starr Marine Agency Inc | | | | | | | $70.00 |
| | | | | | | | $20.00 |

Additional Policies Are Listed On The Attached Schedule of Policies

**2. CERTAIN FINANCIAL TERMS**

| A | -B | =C | +D | +E | =F : (C+D+E) | |
|---|---|---|---|---|---|---|
| TOTAL PREMIUMS AND RELATED FEES | DOWN PAYMENT REQUIRED FROM BORROWER | AMOUNT FINANCED Amount of credit provided to you or on your behalf. | STATE SPECIFIED TAXES OR FEES | TOTAL FINANCE CHARGES Dollar amount the credit will cost you. | TOTAL OF PAYMENTS Amount paid after making all scheduled payments. | ANNUAL PERCENTAGE RATE Cost of your credit as a yearly rate. |
| $415,630.00 | $62,344.50 | $353,285.50 | $0.00 | $10,034.60 | $363,320.10 | 6.15% |

**3. PAYMENT SCHEDULE**

| NUMBER OF PAYMENTS | PAYMENT FREQUENCY | DAY OF MONTH PAYMENTS ARE DUE | AMOUNT OF EACH PAYMENT | FIRST PAYMENT DUE DATE |
|---|---|---|---|---|
| 10 | Monthly  Quarterly<br>Monthly | 13th | $36,332.01 | 10/13/2009 |

**4. REQUIRED DISCLOSURES**

SECURITY INTEREST: Borrower hereby grants Lender a security interest in all insurance policies listed above and all unearned premium, return premium, dividend payments, and loss payments thereof.

LATE CHARGE: If a payment is not made by the 5th day past due for such later date as required by law), then Borrower will be charged a late charge (SEE SECTION 10 "LATE CHARGES" ON THE ADDITIONAL PROVISIONS PAGE OF THIS AGREEMENT FOR STATE SPECIFIC INFORMATION).

PREPAYMENT: If Borrower pays off early, Borrower will not have to pay a penalty and may be entitled to a refund of part of the finance charge.

CONTRACT REFERENCE: See the rest of this Agreement below, and ADDITIONAL PROVISIONS page, for additional information about nonpayment, default, required repayment in full before the scheduled date, prepayment refunds and penalties.

**5. PAYMENT PROVISIONS**: Borrower permitted to pay to Lender at Lender's address above, or such other place as Lender may designate. The Term of Payments shown above in consecutive periodic payments in the number, amount, and at the dates disclosed in the above "Payment Schedule" until loan is fully paid. Any payments made by Borrower after default shall be credited to the then outstanding balance due under this Agreement. INSURED agrees that all installment payments due under this Agreement must be made directly to LENDER and payment made by INSURED to any other person, firm, agency or corporation do not constitute payment unless and until received by LENDER.

PREMIUM FINANCE NOTICE TO BORROWER / INSURED: (1) DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. (2) YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS AGREEMENT. (3) KEEP YOUR COPY OF THIS AGREEMENT TO PROTECT YOUR LEGAL RIGHTS. (4) UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGES.

When signed below by you, or on your behalf, you (Borrower) acknowledge receipt of a copy of this Agreement and that you agree to the provisions printed above and on the ADDITIONAL PROVISIONS page of this Agreement and that both the front and subsequent pages complete the Agreement between Borrower and Lender. Borrower hereby requests Lender to pay the financed portion of its insurance policy premiums listed above, on its behalf.

9/24/09    [signature]    PATRICIA WATERS, CEO
DATE    SIGNATURE OF BORROWER OR DULY AUTHORIZED AGENT OF BORROWER(S)    BY NAME & TITLE
the general partners

**PRODUCER REPRESENTATION**

THE UNDERSIGNED REPRESENTS AND WARRANTS: By signing or submitting this Premium Finance Agreement, the Producer makes the Producer's Representations and Warranties printed on the ADDITIONAL PROVISIONS page of this Agreement and agrees to be bound to the terms of this Agreement. Producer also agrees that there has been no assignment of any interest in the insurance policy(ies) except for the assignment to Lender and Lender may assign this Agreement, including Producer's representations and warranties under its normal course of business.

_____    _____    _____
DATE    SIGNATURE OF PRODUCER (AGENT/BROKER)    PRINT NAME & TITLE

## SCHEDULE OF POLICIES

| NAME OF INSURANCE COMPANY AND GENERAL AGENT | TYPE OF POLICY | POLICY NUMBER | EFFECTIVE DATE | MIN EARNED (%) | SUBJECT TO AUDIT? | POLICY TERM (months) | PREMIUM (1) FIN TXS/FEES (2) NON-FIN TXS/FEES (3) |
|---|---|---|---|---|---|---|---|
| 316648 Starr Indemnity & Liability Compan | UMB | | 9/13/2009 | 0% | | 12 | $135,000.00 |
| 306436 Starr Marine Agency Inc | | | | | | | $0.00 |
| | | | | | | | $0.00 |
| 1989 XL Specialty Insurance Co | UMB | | 9/13/2009 | 0% | | 12 | $100,000.00 |
| | | | | | | | $0.00 |
| | | | | | | | $6.00 |

Schedule 1.01(a)(vii) – Page 7

# ADDITIONAL PROVISIONS OF PREMIUM FINANCE AGREEMENT

## PRODUCER'S REPRESENTATIONS AND WARRANTIES

Schedule 1.01(a)(vii) – Page 8

Schedules to Dunhill Terminals - Asset Purchase Agreement

**Schedule 1.01(b)(i)**

**Excluded Assets**

1. 24 ft. Kenner boat.

2. 2006 Ford F-250 Truck, VIN# 1FTSW21P36EB31756.

3. Biodiesel Coalescer in Chickasaw Warehouse.

## Schedule 1.04

## Preliminary Allocation of Cash Purchase Price

<u>Chickasaw Facility:</u>

Land: $0
Building: $250,000
Equipment: $25,750,000

<u>Blakeley Facility:</u>

Land: $600,000
Building: $250,000
Equipment: $13,550,000

<u>Corporate Equipment:</u> $100,000

---

The amounts set forth in this Schedule 1.04 have been agreed to by the parties. The Purchase Price, however, will be allocated in accordance with Section 1060 of the Code as set forth on Form 8594.

Schedule 1.04 – Page 1

**Schedule 2.03(b)(ii)**

**Payments to Sellers**

To be provided at closing.

**Schedule 3.03**

**No Conflicts; Consents (Sellers)**

1. See Schedule 1.01(a)(iv)

2. See Schedule 1.01(a)(v); The Master Storage Agreement by and between Dunhill Terminals, L.P. and each of its tenants contain the following provisions: (i) Termination - the occurrence and continuation of, among others, bankruptcy, with respect to a party shall constitute good cause for immediate termination of the agreement by either party upon written notice to the other party, and (ii) Assignment – the agreement cannot be assigned or transferred in whole or in part by either party or by law without the prior written consent of the other party.

3. Ground Lease by and between Dunhill Terminals, L.P., as tenant, and Delta Hardwoods Corporation, as landlord, dated March 24, 2006.

Schedules to Dunhill Terminals - Asset Purchase Agreement

Case 10-01342    Doc 11-2    Filed 03/26/10    Entered 03/26/10 20:17:03    Desc Exhibit A - Part 2    Page 17 of 82

## Schedule 3.04

## Financial Statements; Undisclosed Liabilities

1. See the attached Balance Sheets for each of the Sellers, for the month ending December 31, 2009.

2. Premium Finance Contracts.

3. Leased Cars (Enterprises Leasing).

4. Insurance (benefits and self-insurance).

5. Payroll taxes.

6. Benefits.

7. 401(k).

8. Sierra Guaranty (Delta Hardwoods loan).

9. Terminal Guaranty (Delta Hardwoods loan).

10. Top Tech ($25,000).

11. Zink ($20,000).

12. World Telemetry ($30,000).

13. Safe Rock ($60,000).

14. IREC ($73,334).

15. Green River Biodiesel Equipment ($36,887.82).

Dunhill Terminals, L. P.

*FOR THE MONTH ENDING DECEMBER, 31 2009*

## Assets

**Current Assets**

| | | |
|---|---:|---:|
| Cash & Equivalents | $ 1,012.52 | |
| Due To/From - Related Companies | (2,403,234.93) | |
| Accounts Receivable | 766,182.66 | |
| Prepaid Expenses | 318,757.05 | |
| Deposits | 25,000.00 | |
| TOTAL Current Assets | | $ (1,292,282.68) |

**Fixed Assets**

| | | |
|---|---:|---:|
| Property, Plant and Equipment | 34,039,184.67 | |
| Accum Depr. | (15,446,908.54) | |
| TOTAL Fixed Assets | | 18,592,276.13 |

| | | |
|---|---:|---:|
| Total Assets | | $ 17,299,995.45 |

## Liabilities and Equity

**Current Liabilities**

| | | |
|---|---:|---:|
| Accounts Payable - Trade | $ 758,596.73 | |
| Accrued Accounts | 1,351,827.54 | |
| Other Payables | 73,333.34 | |
| TOTAL Current Liabilities | | $ 2,193,757.61 |

**Long Term Liabilities**

| | | |
|---|---:|---:|
| Notes Payable | $ 36,939,097.26 | |
| Deposits | 18,000.00 | |
| TOTAL Long Term Liabilities | | $ 36,957,097.26 |

| | | |
|---|---:|---:|
| TOTAL LIABILITIES | | 39,150,864.87 |

**Equity**

| | | |
|---|---:|---:|
| Partner Capital | (21,850,859.42) | |
| TOTAL Equity | | $ (21,850,859.42) |
| TOTAL Liabilities and Equity | | $ 17,299,995.45 |

Schedule 3.04 – Page 2
Schedules to Dunhill Terminals - Asset Purchase Agreement

Dunhill Terminals, G.P.

*FOR THE MONTH ENDING December 31, 2009*

## Assets

### Current Assets

| | | |
|---|---:|---:|
| Cash & Equivalents | $ 1,347.50 | |
| Due To/From - Related Companies | 328,843.26 | |
| Accounts Receivable | 27,101.84 | |
| Prepaid Expenses | 3,305.00 | |
| Deposits | 33,500.00 | |
| TOTAL Current Assets | | $ 394,097.60 |

### Fixed Assets

| | | |
|---|---:|---:|
| Property, Plant and Equipment | 295,768.27 | |
| Accum Depr. | (111,380.31) | |
| TOTAL Fixed Assets | | 184,387.96 |

| | | |
|---|---:|---:|
| **Total Assets** | | $ 578,485.55 |

## Liabilities and Equity

### Current Liabilities

| | | |
|---|---:|---:|
| Accounts Payable - Trade | $ 514,078.65 | |
| Accrued Accounts | 285.73 | |
| Other Payables | (9,659.99) | |
| **TOTAL Current Liabilities** | | $ 504,704.39 |

### Long Term Liabilities

| | | |
|---|---:|---:|
| Notes Payable | | |
| Deposits | | |
| **TOTAL Long Term Liabilities** | | $ - |

| | | |
|---|---:|---:|
| **TOTAL LIABILITIES** | | 504,704.39 |

### Equity

| | | |
|---|---:|---:|
| Partner Capital | 73,781.17 | |
| **TOTAL Equity** | | $ 73,781.17 |

| | | |
|---|---:|---:|
| **TOTAL Liabilities and Equity** | | $ 578,485.56 |

System Date: 3/2/2010 12:33 PM

Page: 1

Schedule 3.04 – Page 3
Schedules to Dunhill Terminals - Asset Purchase Agreement

BALANCE SHEET                                    Dunhill Entities, L. P.

## Assets

**Current Assets**

| | | |
|---|---:|---:|
| Cash & Equivalents | $ 8,440.21 | |
| Due To/From – Related Companies | 4,397,902.76 | |
| Accounts Receivable | 10,942.39 | |
| Prepaid Expenses | 79,290.04 | |
| Deposits | 8,000.00 | |
| TOTAL Current Assets | | $ 4,500,575.40 |

**Fixed Assets**

| | | |
|---|---:|---:|
| Property, Plant and Equipment | 19,043,058.35 | |
| Accum Depr. | (4,875,112.91) | |
| TOTAL Fixed Assets | | 14,167,945.44 |
| | | |
| **Total Assets** | | $ 18,668,520.84 |

## Liabilities and Equity

**Current Liabilities**

| | | |
|---|---:|---:|
| Accounts Payable - Trade | $ 2,702,371.83 | |
| Accrued Accounts | | |
| Other Payables | | |
| TOTAL Current Liabilities | | $ 2,702,371.83 |

**Long Term Liabilities**

| | | |
|---|---:|---:|
| Notes Payable | $ 20,603,400.45 | |
| TOTAL Long Term Liabilities | | $ 20,603,400.45 |
| TOTAL LIABILITIES | | 23,305,772.28 |

**Equity**

| | | |
|---|---:|---:|
| Partner Capital | (4,637,251.44) | |
| TOTAL Equity | | $ (4,637,251.44) |
| TOTAL Liabilities and Equity | | $ 18,668,520.84 |

System Date: 2/26/2010 12:57 PM                                    Page: 1

Schedule 3.04 – Page 4
Schedules to Dunhill Terminals - Asset Purchase Agreement

*Dunhill Entities, G. P.*

*FOR MONTH ENDING DECEMBER 31, 2009*

Assets

**Current Assets**

| | | | | |
|---|---|---|---|---|
| Cash & Equivalents | $ | 675.17 | | |
| Due To/From - Related Companies | | (10,606.52) | | |
| **TOTAL Current Assets** | | | $ | (9,931.35) |

**Fixed Assets**

| | | | |
|---|---|---|---|
| Property, Plant and Equipment | - | | |
| Accum Depr. | - | | |
| TOTAL Fixed Assets | | | - |
| **Total Assets** | | $ | (9,931.35) |

Liabilities and Equity

**Equity**

| | | | |
|---|---|---|---|
| Partner Capital | (9,931.35) | | |
| **TOTAL Equity** | | $ | (9,931.35) |
| **TOTAL Liabilities and Equity** | | 0 | - |

Schedule 3.04 – Page 5
Schedules to Dunhill Terminals - Asset Purchase Agreement

## Schedule 3.05

## Litigation

**Pending litigation against Dunhill Terminals, GP, LLC, Dunhill Terminals, L.P., Dunhill Entities, GP, LLC, and Dunhill Entities, L.P. (as of 2/17/10):**

1. Case No. CV-09-900950; *Natures Way Marine, LLC vs. Dunhill Products (Alabama) GP, et al.*; In the Circuit Court of Mobile County, Alabama; Amount in controversy: $333,746.

2. Case No. CV-09-902343; *H&H Electric Co., Inc. vs. Dunhill Entities, L.P. and Dunhill Terminals, L.P.*; Amount in controversy: $130,824.49.

3. Case No. CV-09-902250; *James H. Adams & Son Construction, Inc. vs. Dunhill Entities, L.P. and Dunhill Terminals, L.P.*; Amount in controversy: $868,495.80.

4. Case No. CV-10-900153; *Regions Bank, et. al. v. Dunhill Terminals, L.P. and Dunhill Entities, L.P.*; Amount in controversy: $59,000,000.00.

5. Case No. CV-09-902403; *Smith Tank & Steel v. Dunhill Terminals, L.P. and Dunhill Entities, L.P., et. al.*; Amount in controversy: $2,031,287.39.

6. Case No. CV-09-1844; *Hiller Systems, Inc. v. Dunhill Terminals, L.P.*; Judgment amount: $15,723.

7. Case No. AL-43938; *Ace Paint Maintenance, Inc. d/b/a Ace Fab v. Dunhill Entities, L.P.*; Lien action; Amount in controversy: $9,376.90.

8. Case No. 2010-13837; *Michael Rice v. Accumarine Transportation LP; Dunhill Terminals GP LLC*; Jones Act suit in which the plaintiff suffered injuries while working as a tankerman for defendant Dunhill Terminals aboard the Accumarine Transportation's vessel due to its alleged unseaworthy condition.

9. See Schedule 3.09, Item #1, Mikel Wilson Worker's Compensation Claim (threatened).

10. L&W Insulation collection for past due amounts.

11. Cause No. 2009: *Franklin, Cardwell & Jones, P.C. v. Dunhill Terminals, L.P.*, et al; in the 234th Judicial District of Harris County, Texas, amount in controversy $53,378.87.

Schedule 3.06

**Personal Property Encumbrances**

1. Phone System (leased).

2. Two Copiers (leases).

3. Cars leased from Enterprise Leasing.

Schedules to Dunhill Terminals - Asset Purchase Agreement

## Schedule 3.07(a)

### Leased Real Property

1. Leased property located at 500 Viaduct, Chickasaw, Alabama 36611; Ground Lease by and between Dunhill Terminals, L.P., as tenant, and Delta Hardwoods Corporation, as landlord, dated March 24, 2006.

2. That certain Lease Agreement by and between Dunhill Entities, L.P. as Landlord and Valero Marketing and Supply Company as Tenant, made effective as of December 29, 2006.

3. See Schedule 1.01(a)(v) for Valero Sublease.

### Owned Real Property

1. Owned real property located at 1437 Cochrane Causeway, North Mobile, AL 36652, as evidenced by and more particularly described by that certain Special Warranty Deed filed and recorded in the real property records of Mobile County, Alabama, Recording Number 2007001130, Book 6108, Page 979 on January 4, 2007.

## Schedule 3.07(b)(i)

### Easements

1.  See attachments to Schedule 3.07(b)(ii).

## Schedule 3.07(b)(ii)

## Easement Agreements

1. See attached Schedule B to the Fidelity National Title Insurance Company Title Policy, File No. 20071107 FEE-LEASEHOL.

2. See attached Schedule B to the Stewart Title Guaranty Company Title Policy, File No. 77993.

3. Quitclaim by and between Mobile-Chickasaw Port Facility, Inc., as grantor, and Delta Hardwood Corporation, as grantee filed with the Office of the Probate Judge of Mobile County, Alabama.

Schedules to Dunhill Terminals - Asset Purchase Agreement

Fidelity National Title Insurance Company

**SCHEDULE B**

File Number: 20071107FEE-LEASEHOL       Policy Number: PROFORMA

**EXCEPTIONS FROM COVERAGE**
**PART I**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Notwithstanding anything to the contrary contained herein, the policy to be issued pursuant hereto will not attempt to set out the manner in which oil, gas and minerals, or any rights in connection therewith.

2. All Taxes for the year 2008 and subsequent years, not yet due and payable.

3. Navigation servitudes and all other statutory regulatory and littoral rights and powers of the United States of America, the State of Alabama, the City of Mobile (if within a municipality), and other governmental entity and the public over lands comprising the beds of oceans, gulfs or bays and their shore lands extending to the ordinary high water line thereof, land beyond the line of the border or bulkhead lines, filled in lands, submerged lands, wetlands or artificial lands. (PARCEL 1 and 2)

4. Rights of other parties, the United States of America, and/or the State of Alabama, in and to the shore, littoral or riparian rights to the subject property lying adjacent to Chickasaw Bougs Creek. (PARCEL 2)

5. Right of way Deed to James H. Harless as recorded in Real Property Book 841, Page 747. (PARCEL 2)

6. Agreement with Brazilian Hardwoods as recorded in Real Property Book 976, Page 881. (PARCEL 2)

7. Hold Harmless Agreement with City of Mobile as recorded in Real Property Book 1408, Page 407. (PARCEL 2)

8. Easement with Louisiana Land & Exploration Company, Inc., as recorded in Real Property Book 4309, Page 1708. (PARCEL 2)

9. Rights and easements as recorded in Deed Book 264, N.S. Page 135. (PARCEL 2)

10. Reservations and exceptions as contained in deed granted to Gulf Shipbuilding Corporation and recorded in Deed Book 260 N.S , Page 461 (PARCEL 2)

11. Exceptions and reservations contained in deed from Tennessee Land Company to Gulf Shipbuilding Corporation recorded in Deed Book 269 N.S., Page 114 (PARCEL 2)

12. Easement in Real Property Book 296, Page 473 (PARCEL 2)

13. No title is insured to any portion of land lying below the mean high water line of Chickasaw Bouga creek as it existed in December 1819, or such other location of the mean high water line as may subsequently have exited further upland. (PARCEL 2)

14. Access Easement granted for ingress and egress by and between Alabama Power Company and Delta Hardwoods Corporation, recorded in Real Property Book 5986, Page 1199. (PARCEL 2)

15. Memorandum of Lease by and between Delta Hardwoods Corporation, an Alabama corporation and Dunhill Terminals, L.P., a Texas limited partnership recorded in Real Property Book 5986, Page 1204 (PARCEL 2)

16. Rights-of-way for railroad, switch tracks, spur tracks, railway facilities and other related easements, if any, on and across the land (PARCEL 2)

17. Easement granted to Chickasaw Utilities Company, recorded in Deed Book 245 N.S., Page 405 and 408 (PARCEL 2)

AETA Loan/Construction Loan Policy
Schedule B - Part I (10/17/92)

(20071107FEE-LEASEHOL/D PFD/20071107FEE-LEASEHOL/5)

Schedules to Dunhill Terminals - Asset Purchase Agreement

File Number: 20071107FEE-LEASEHOL

Policy Number: PROFORMA

18. Easement and right of way recorded in Real Property Book 4198, Page 599 (PARCEL 2)

19. Perpetual right of way easement by and between Aluminum Company of America and the United States of America, dated February 26, 19577 and recorded in Deed Book 782, Page 187, and in Map Book 95, Page 3, and as shown on survey prepared by Douglas A. Bryant, PLS, Ala. License No. 21166, dated January 29, 2005 and revised February 25, 2005. (PARCEL 1)

20. Agreement by and between Aluminum Company of America and Alabama Power Company, dated May 10, 1957 and recorded in Deed Book 742, Page 522, and in Map Book 95, Page 3, and as shown on survey prepared by Douglas A. Bryant, PLS, Ala. License No. 21166, dated January 29, 2005 and revised February 25, 2005. (PARCEL 1)

21. Easement with right, privilege and authority to construct, repair and maintain a private fifty (50) foot roadway by and between S. Louis San Francisco Railway Company and Alabama Chemical Terminal, Inc. by instrument dated June 17, 1975 and recorded in Real Property Book 1476, Page 633, and in Map Book 95, Page 3, and as shown on survey prepared by Douglas A. Bryant, PLS, Ala. License No. 21166, dated January 29, 2005 and revised February 25, 2005. (PARCEL 1)

22. Easement granted Alabama Power Company by instrument recorded in Real Property Book 1604, Page 200; Real Property Book 4803, Page 223, Real Property Book 4803, Page 220, and in Map Book 95, Page 3, and as shown on survey prepared by Douglas A. Bryant, PLS, Ala. License No. 21166, dated January 29, 2005 and revised February 25, 2005. (PARCEL 1)

23. Agreement by and between Alabama Power Company and the Alabama State Port Authority, dated June 14, 2001 and recorded in Real Property Book 5371, Page 1234, and as shown on survey prepared by Douglas A. Bryant, PLS, Ala. License No. 21166, dated January 29, 2005 and revised February 25, 2005. (PARCEL 1)

24. Pier usage agreement by and between Eagle Asphalt Products, Inc. and Argain, Inc., dated March 19, 2002, and recorded March 10, 2005 in Book 5741, Page 317, and shown on plat as recorded in Map Book 95, Page 3, and as shown on survey prepared by Douglas A. Bryant, PLS, Ala. License No. 21166, dated January 29, 2005 and revised February 25, 2005. (PARCEL 1)

25. Rights of other parties, the United States of America, and/or the State of Alabama, in and to the shore, littoral or riparian rights to the subject property lying adjacent to Mobile River. (PARCEL 1)

26. Building setback line and drainage, utility easements and all other matters as shown on recorded plat of said subdivision. (PARCEL 1)

27. Thirty foot perpetual easement reserved to Alabama, Tennessee and Northern Railroad Corporation, its successors and assigns in the deed recorded in Deed Book 273, Page 61, and in Map Book 95, Page 3, and as shown on survey prepared by Douglas A. Bryant, PLS, Ala. License No. 21166, dated January 29, 2005 and revised February 25, 2005. (PARCEL 1)

28. Memorandum of Lease executed by and between Dunhill Entities, L.P. and Valero Marketing and Supply Company, dated 12-29-2006, recorded 1-4-2007, in Book 6106, Page 988 Note: Applies to Parcel 2 only

Schedule 3.07(b)(ii) – Page 3

Schedules to Dunhill Terminals - Asset Purchase Agreement

# COMMITMENT FOR TITLE INSURANCE

## SCHEDULE B
### Part I

File No: 77993

The Following are requirements to be complied with:

1. Proof of identity, legal age, competency of Grantors/Mortgagors and marital status (including deaths and divorces) effecting any individual Grantors/Mortgagors, herein.
2. TO BE PRODUCED BEFORE OR AT CLOSING: Drivers License, Social Security Number(s) or Tax Identification Number(s), along with future address(s) of the seller(s) must be furnished to comply with reporting requirements of the IRS.
3. POWERS OF ATTORNEY: If any party to the settlement intends to use a Power of Attorney at settlement, a copy of such Power of Attorney must be submitted for review in advance of settlement. Failure to comply with this requirement may result in the postponement of the settlement. Acceptability of the Power of Attorney for purpose of completion of settlement is within the discretion of the insurer. If accepted the Power of Attorney must be recorded in the county where the property is located.
4. Payment to or for the account of the grantors or mortgagors of the full consideration for the estate or interest, mortgage or lien to be issued.
5. Furnish proof of payment of all bills for labor and material furnished or to be furnished in connection with improvements erected or to be erected.
6. Pay all general and special taxes now due and payable.
7. Record instrument conveying or encumbering the estate or interest to be insured, briefly described:

   A. Execution and recordation, in the Office of the Judge of Probate, MOBILE COUNTY, Alabama, without intervening rights, of a Warranty Deed by MOBILE-CHICKASAW PORT FACILITY, INC., AN ALABAMA CORPORATION, acting by and through its duly authorized officers, to DELTA HARDWOODS CORPORATION conveying the property described in Schedule "A" hereof. (Parcels A, C-1 and D)

8. There should be submitted to us certified copies of resolutions adopted by the Stockholders and Directors of said MOBILE-CHICKASAW PORT FACILITY, INC., an Alabama Corporation authorizing the execution of this deed, and further authorizing the officers of said corporation to execute the same for and in the name of the corporation. (Parcels A, C-1 and D)

9. Payment of any municipal assessments that may be due or may become due the City of Chickasaw. (Parcels A, C-1 and D)

   NOTE: 2007 taxes assessed to Mobile Chickasaw Port Facility, Inc. are marked PAID in the amount of $60.96, Key #01490228. (Parcel A)

   NOTE: 2007 taxes assessed to Mobile Chickasaw Port Facility, Inc. are marked PAID in the amount of $176.08, Key #02576541. (Part of Parcel C-1)

   NOTE: 2007 taxes assessed to Mobile Chickasaw Port Facility, Inc. are marked PAID in the amount of $32.86, Key #00191013. (Part of Parcel C-1)

This Commitment is invalid unless the Commitment Cover Sheet and Schedule A and B (Part I and II) are attached.
Schedule B-Part I page 1

ALTA Commitment (6-17-06)
Commit.frm (Alabama.06-2007)

stewart

Schedules to Dunhill Terminals - Asset Purchase Agreement

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE B
### Part I

File No: 77993

NOTE: 2007 taxes assessed to Mobile Chickasaw Port Facility, Inc. are marked PAID in the amount of $12.72, Key #02570550. (Parcel D)

NOTE: 2007 taxes assessed to Mobile Chickasaw Port Facility, Inc. are marked PAID in the amount of $8.18, Key #01791412. (Personal Property)

THE COMPANY MAY MAKE OTHER REQUIREMENTS OR EXCEPTIONS UPON ITS REVIEW OF THE DOCUMENTS CREATING THE ESTATE OR INTEREST TO BE INSURED OR OTHERWISE ASCERTAINING DETAILS OF THE TRANSACTION.

This Commitment is invalid unless the Commitment Cover Sheet and Schedule A and B (Part I and II) are attached

Schedule B-Part I page 2

ALTA Commitment (6-17-06)
CommLlrm (Alabama 08-2007)

stewart
the guaranty company

# COMMITMENT FOR TITLE INSURANCE

## SCHEDULE B
### Part II

File No: 77983

Schedule B of the policy or policies to be insured will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company.

1. Defects, liens, encumbrances, adverse claims or other matter, if any, created first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the date the proposed insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.
2. Taxes for the current year.
3. Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or any overlapping of improvements or other boundary or location disputes (can be eliminated or amended in mortgagee's policy upon proper evidence being furnished).
4. Restrictive covenants affecting the property described in Schedule A.
5. Rights or claims of parties in possession, and not of record in the public records; liens for labor, services or material or claims to same which are not of record in said records.
6. Any roadway or easement, similar or dissimilar, on, under, over or across said property, or any part thereof and not of record in said records.
7. Any titles or rights asserted by anyone, including but not limited to person, corporations, governments, or other entities, to tideland, or lands comprising the shores or bottoms of navigable rivers, lakes, bays, ocean or gulf, or lands beyond the line of the harbor or bulkhead lines as established or changed by the United States Government or riparian rights, if any.

Special Exceptions

1. Taxes for the year 2008, which became a lien as of October 1, 2007, but are not due and payable until October 1, 2008.

2. Any law ordinance or governmental regulation requiring the preparation, approval and/or recordation of any plat of property described in Schedule "A".

3. Pipe line right of way conveyed to Alabama Water Service Company by Chickasaw Utilities Company by instrument dated August 1, 1936 and recorded in Miscellaneous Book 73, Page 181. (Parcels A, C-1 and D)

4. Easement granted Chickasaw Utilities Company by Chickasaw Land Company, by instrument dated July 1, 1921 and recorded in Deed Book 245, Page 405. (Parcels A, C-1 and D)

5. Easement granted Chickasaw Utilities Company by Chickasaw Shipbuilding and Car Company, by instrument dated July 1, 1921 and recorded in Deed Book 245, Page 408. (Parcels A, C-1 and D)

6. Reservations and exceptions as contained in deed from Chickasaw Shipbuilding and Car Company to Gulf Shipbuilding Corporation dated November 14, 1938 and recorded in Deed Book 280, Page 451. (Parcels A, C-1 and D)

This Commitment is invalid unless the Commitment Cover Sheet and Schedule A and B (Part I and II) are attached
Schedule B-Part II page 1

ALTA Commitment (6-17-06)
CommitJim (Alabama 08/2007)

r stewart

Schedules to Dunhill Terminals - Asset Purchase Agreement

COMMITMENT FOR TITLE INSURANCE

## SCHEDULE B
## Part II

File No: 77993

7.  Pipe line right of way conveyed Alabama Water Service Company by Chickasaw Shipbuilding and Car Company, by Instrument dated December 29, 1938 and recorded in Deed Book 281, Page 684. (Parcels A, C-1 and D)

8.  The conditions and provisions contained in warranty deed from Chickasaw Shipbuilding and Car Company to Alabama Power Company dated January 30, 1939 and recorded in Deed Book 282, Page 258. (Parcels A, C-1 and D)

9.  Reservation and exceptions contained in deed from Tennessee Land Company to Gulf Shipbuilding Corporation dated September 3, 1940 and recorded in Deed Book 299, Page 194. (Parcels A, C-1 and D)

10. Reservation and exceptions as contained in deed from Tennessee Land Company to Gulf Shipbuilding Corporation dated March 21, 1941 and recorded in Deed Book 309, Page 193. (Parcels A, C-1 and D)

11. Reservation and exceptions as contained in attached easement from Tennessee Land Company to Gulf Shipbuilding Corporation dated March 21, 1941 and recorded in Deed Book 309, Page 197. (Parcels A, C-1 and D)

12. Reservation of easement for roadway and railroad tracks contained in deed from Tennessee Land Company to Alabama Property Company dated December 27, 1941 and recorded in Deed Book 320, Page 117. (Parcels A, C-1 and D)

13. Reservation and exceptions contained in deed from Alabama Power Company to Gulf Shipbuilding Corporation dated January 9, 1942 and recorded in Deed Book 340, Page 586. (Parcels A, C-1 and D)

14. Easement granted Alabama Power Company by Gulf Shipbuilding Company, a corporation, by Instrument dated October 31, 1941 and recorded in Deed Book 496, Page 186. (Parcels A, C-1 and D)

15. Easement granted Alabama Power Company by Alabama Turbine Corporation by Instrument dated December 9, 1965 and recorded in Real Property Book 563, Page 275. (Parcels A, C-1 and D)

16. Non-Exclusive Easements for ingress and egress and rights of ways conveyed to Alabama Industry Development Corporation of Mobile by Alabama Turbine Corporation by Instrument dated May 24, 1966 and recorded in Real Property Book 662, Page 705. (Parcels A, C-1 and D)

17. Easement granted to Phillips Petroleum Company by Trustees of Central States, Southeast and Southwest Areas Pension Fund dated November 12, 1974 and recorded in Real Property Book 1427, Page 190 and amended in Amendment of Pipeline Easement, dated September 26, 1975 and recorded in Real Property Book 1538, Page 122. (Parcels A, C-1 and D)

This Commitment is invalid unless the Commitment Cover Sheet and Schedule A and B (Part I and II) are attached
Schedule B-Part II page 2

ALTA Commitment (6-17-06)
Comm.Ism (Alabama 08/2007)

stewart

COMMITMENT FOR TITLE INSURANCE

## SCHEDULE B
## Part II

File No: 77903

18.   Easement granted Alabama Power Company by Port of Chickasaw, Inc., by instrument dated August 21, 1975 and recorded in Real Property Book 1504, Page 196.  (Parcels A, C-1 and D)

19.   Non-Exclusive Easements for ingress and egress and rights of ways conveyed to Mobile-Chickasaw Port Facility, Inc., by the Trustees of Central States, Southeast and Southwest Areas Pension Fund as Trustees under that certain Trust Agreement dated March 16, 1955, as amended by instrument dated September 25, 1967 and recorded in Real Property Book 3170, Page 935.  (Parcels A, C-1 and D)

20.   Easement granted Alabama Power Company by Mobile-Chickasaw Port Facility, Inc. by instrument dated September 20, 1985 and  recorded in Real Property Book 3347, Page 410.  (Parcels A, C-1 and D)

21.   Easement and Right of Way granted Coastal Mobile Refining Company by Mobile-Chickasaw Port Facility, Inc. by instrument dated September 12, 1994 and recorded in Real Property Book 4198, Page 899.  (Parcels A, C-1 and D)

22.   Agreement for Easements and Access Rights by and between Mobile-Chickasaw Port Facility, Inc. and Southern Ionics, Inc. dated September 28, 1994 and recorded in Real Property Book 4207, Page 1467 and amended in Amendment Agreement Regarding Easements and Access Rights dated March 22, 2002 and recorded in Real Property Book 5135, Page 263 and further amended in Supplemental Amendment Agreement Regarding Easements and Access Rights dated March 22, 2002 and recorded in Real Property Book 5378, Page 1549 and further amended in Partial Release and Amendment of Agreement for Easements and Access Rights dated December 17, 2007 and recorded in Real Property Book 6309, Page 546.  (Parcels A, C-1 and D)

23.   Agreement for Easements and Access Rights by and between Mobile-Chickasaw Port Facility, Inc. and Delta Marine Terminal, LLC dated February 6, 2007 and recorded in Real Property Book 6127, Page 757.  (Parcels A, C-1 and D)

24.   Differences in record and actual distances and bearings along all sides of the property; chain link fence not located along the South property line; overhead power lines over and across the North, East and West property lines and railroad tracks over and across the East property lines all as shown on survey by Rowe Surveying and Engineering Company, Inc., dated January 3, 2008.  (Parcels A, C-1 and D)

25.   Rights of other parties in and to use the railroad rights of way over and across the property described in Schedule "A" as shown on survey by Rowe Surveying and Engineering Company, Inc., dated January 3, 2008.  (Parcel A)

      NOTE: The current tax valuation is in accordance with the present assessment rolls in the Tax Assessor's Office, but is subject to any future adjustment made by either the Tax Assessor's Office or the Board of Equalization.  Neither this Commitment nor any policy of title insurance issued pursuant hereto, purports to, or shall be construed to, insure against the lien of any ad valorem taxes which may become subsequently effective as to

This Commitment is invalid unless the Commitment Cover Sheet and Schedule A and B (Part I and II) are attached

Schedule B-Part II page 3

ALTA Commitment (6-17-06)
Commit.frm (Alabama 08/2007)

stewart

Schedules to Dunhill Terminals - Asset Purchase Agreement

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE B
#### Part II

File No: 77993

the insured property notwithstanding that such lien may retroactively apply to prior tax years by virtue of an escape or change in valuation occasioned by a change in category or use of the property.

NOTE: This binder does not attempt to set out the manner in which the title to oil, gas or other minerals is now vested and does not insure any rights or easements in connection with such interest.

**Schedule 3.07(c)**

**Real Property Encumbrances**

1.  Construction Loan Note in the principal amount of $26,000,000.00, dated November 21, 2007, executed by Dunhill Terminals, L.P., and Dunhill Entities, L.P., to the order of Regions Bank.

2.  Promissory Note in the principal amount of $8,500,000.00, dated January 20, 2009, executed by Dunhill Terminals, L.P. and Dunhill Entities, L.P., to the order of Regions Bank.

3.  Construction Loan Note in the principal amount of $24,000,000.00, dated March 3, 2008, executed by Dunhill Terminals, L.P., and Dunhill Entities, L.P., to the order of Columbus Bank and Trust Company.

4.  Demand Promissory Note in the principal amount of $412,998.70, dated July 31, 2009, executed by Dunhill Terminals LP and Dunhill Entities, L.P., to the order of Regions Bank.

5.  Demand Promissory Note in the principal amount of $742,443.82, dated July 31, 2009, executed by Dunhill Products, LP, to the order of Regions Bank.

6.  Security Agreement dated as of November 21, 2007 executed by Dunhill Entities, L.P., Dunhill Terminals, L.P. and certain subsidiaries signatory thereto in favor of Regions Bank, as Administrative Agent.

7.  Mortgage, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing dated as of November 21, 2007 by Dunhill Entities, L.P. to Regions Bank recorded in the Office of the Judge of Probate of Mobile County, Alabama as document number 2007097322 in Book 6306, Page 400.

8.  Leasehold Mortgage, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing dated as of November 21, 2007 by Dunhill Terminals, L.P. to Regions Bank recorded in the Office of the Judge of Probate of Mobile County, Alabama as document number 2007097320 in Book 6306, Page 374.

9.  UCC Financing Statement filed in favor of Regions Bank, as Administrative Agent and Secured Party against Dunhill Entities, L.P., as Debtor, with the Office of the Judge of Probate of Mobile County, Alabama.

10. That certain Lease Agreement by and between Dunhill Entities, L.P. as Landlord and Valero Marketing and Supply Company as Tenant, made effective as of December 29, 2006.

11. See Schedule 1.01(a)(v) for Valero Sublease

12.    See attached letter from GCAC and survey setting forth the description of NFPA tank violations with respect to Dunhill Terminals, L.P.'s tanks located at the Blakely Island Facility, Mobile, Alabama.



**GULF COAST**      **COMPANY**

February 8, 2010

Dunhill Terminals, L.P.
7026 Old Katy Road, Suite 249
Houston, TX 77024
Attn: Ms. Patricia Waters

RE:    Dunhill's Blakely Island Facility, Mobile, Alabama

Dear Ms. Waters:

You have questioned the basis for our determination that Dunhill's tanks are not in compliance with NFPA regulations. Attached please find copies of the applicable regulations and supporting tables. I have also included the results of our recent survey of your facility on Blakely Island. Under any likely interpretation of the rules, it is our opinion that the subject tanks would not be suitable for their intended use.

We trust this information will be useful to you. If you have any questions, please call me.

Very truly yours,

GULF COAST ASPHALT COMPANY, L.L.C.

By: _____
A.J. Brass, President

11 Greenway Plaza, Suite 2950 Houston, TX 77046 Phone: (832) 426-3310 Fax (832)-426-3320

Schedule 3.07(c) – Page 3

...systems shall sound an alarm when ... that reach or exceed 25 percent of ... of the liquid stored. Vapor detectors ... (than 12 in. (305 mm) above the low...

... on systems shall sound an alarm upon ... including water. Liquid detectors shall ... with the manufacturer's instructions.

... either the vapor detection system or ... shall cause a signal to be sounded ... ... intended location within the facility ... approved location.

... The tank shall be installed in ... ... requirements:

... tank shall be anchored to resist ... ... or flooding, including when the tank;

... restrain to damage from the impact ... be protected by collision barriers. ... shall be permitted to be installed

... provided to recover liquid from the ... to meet this requirement, the pump ... installed in the tank. Electric-powered ... approved for use in Class 1, Division 1 ... NFPA 70, *National Electrical Code*.

... a warning sign indicating the need ... ... into confined spaces shall be ... it shall be secured against unauthor... ...

... Reserved.

... enclosed tanks shall be listed and shall ... with UL 2085, *Standard for Insulated* ... *Aboveground and Combustible Liquids*. Pro... ... both of the following requirements:

... that provides the required fire-resistive ... release of liquid, failure of the primary ... porting structure, and impairment of ... ... less than 2 hours when exposed to ...

... emergency vent shall not be permitted ... otherwise be permitted by 2.2.5.2.5.

... Tank Appurtenances. Primary ... shall be provided with interactions for ... ... of the normal and emergency vents.

... and Anchoring of Tanks.

... in the ground or on foundations resting ... ing, or steel. Tank foundations shall be ... ... possibility of uneven settling of the ... resting on any part of the tank resting on ...

---

**2.3.1.3** Where tanks are supported above their foundations, tank supports shall be installed on firm foundations. Supports for tanks storing Class I, Class II, or Class IIIA liquids shall be of concrete, masonry, or protected steel.

*Exception: Single wood timber supports (not cribbing), laid horizontally, shall be permitted to be used for outside aboveground tanks of not more than 12 in. (0.3 m) high at their lowest point.*

**2.3.1.3** Steel structures or exposed piling for tanks storing Class I, Class II, or Class IIIA liquids shall be protected by materials having a fire resistance rating of not less than 2 hours.

*Exception No. 1: Steel saddles do not need to be protected if less than 12 in. (0.3 m) high at their lowest point.*

*Exception No. 2: At the discretion of the authority having jurisdiction, water spray protection in accordance with NFPA 15, Standard for Water Spray Fixed Systems for Fire Protection, or NFPA 13, Standard for the Installation of Sprinkler Systems, or equivalent shall be permitted to be used.*

**2.3.1.4** Where a tank is located in an area subject to flooding, precautions shall be taken to prevent tanks, either full or empty, from floating during the time water level rises to the established maximum flood stage.

**2.3.2*** Installation of Aboveground Tanks.

**2.3.2.1** Location with Respect to Property Lines, Public Ways, and Important Buildings on the Same Property.

**2.3.2.1.1** Tanks storing Class I, Class II, or Class IIIA stable liquids and operating at pressures not in excess of 2.5 psig (gauge pressure of 17.2 kPa) shall be located in accordance with Tables 2.3.2.1.1(a) and 2.3.2.1.1(b). Where tank spacing is based on a weak roof-to-shell seam design, the user shall present evidence establishing such construction to the authority having jurisdiction upon request.

*Exception: Vertical tanks with weak roof-to-shell seams (see 2.2.5.2.3) that store Class IIIA liquids shall be permitted to be located at one-half the distances specified in Table 2.5.2.1.1(a), provided the tank is not within the same diked area as or the drainage path of a tank storing a Class I or Class II liquid.*

**2.3.2.1.2** Tanks storing Class I, Class II, or Class IIIA stable liquids and operating at pressures that exceed 2.5 psig (gauge pressure of 17.2 kPa), or are equipped with emergency venting that will permit pressures to exceed 2.5 psig (gauge pressure of 17.2 kPa), shall be located in accordance with Tables 2.3.2.1.2 and 2.3.2.1.1(b).

**2.3.2.1.3** Tanks storing liquids with boil-over characteristics shall be located in accordance with Table 2.3.2.1.3. Liquids with boil-over characteristics shall not be stored in fixed roof tanks larger than 150 ft (45.7 m) in diameter, unless an approved venting system is provided on the tank.

**2.3.2.1.4** Tanks storing unstable liquids shall be located in accordance with Tables 2.3.2.1.4 and 2.3.2.1.1(b).



---

Schedule 3.07(c) – Page 4

Table 2.3.2.1.1(a) Stable Liquids [Operating Pressure 2.5 psig (gauge pressure of 17.2 kPa) or Less]

| Type of Tank | Protection | Minimum Distance in Feet from Property Line that Is or Can Be Built Upon, Including the Opposite Side of a Public Way, and Shall Not Be Less than 5 ft | Minimum Distance in Feet from Nearest Side of Any Public Way or from Nearest Important Building on the Same Property and Shall Not Be Less than 5 ft |
|---|---|---|---|
| Floating roof | Protection for exposures | $^{1}/_{2}$ times diameter of tank | $^{1}/_{6}$ times diameter of tank |
| | None | Diameter of tank but need not exceed 175 ft | $^{1}/_{6}$ times diameter of tank |
| Vertical with weak roof-to-shell seam | Approved foam or inerting system on tanks not exceeding 150 ft in diameter | $^{1}/_{2}$ times diameter of tank | $^{1}/_{6}$ times diameter of tank |
| | Protection for exposures | Diameter of tank | $^{1}/_{2}$ times diameter of tank |
| | None | 2 times diameter of tank but need not exceed 350 ft | $^{1}/_{2}$ times diameter of tank |
| Horizontal and vertical tanks with emergency relief venting to limit pressures to 2.5 psig (gauge pressure of 17.2 kPa) | Approved inerting system out the tank or approved foam system on vertical tanks | $^{1}/_{2}$ times Table 2.3.2.1.1(b) | $^{1}/_{2}$ times Table 2.3.2.1.1(b) |
| | Protection for exposures | Table 2.3.2.1.1(b) | Table 2.3.2.1.1(b) |
| | None | 2 times Table 2.3.2.1.1(b) | Table 2.3.2.1.1(b) |

For SI units, 1 ft = 0.3 m.
[a]See definition 1.6.38, Protection for Exposures.
[b]See NFPA 69, Standard on Explosion Prevention Systems.
[c]For tanks over 150 ft in diameter, use "Protection for Exposures" or "None," as applicable.



3616

Table 2.3.2.1.1(b) Reference Table for Use in Tables 2.3.2.1.1(a), 2.3.2.1.2, 2.3.2.1.3, and 2.3.2.1.4

| Tank Capacity (gal) | Minimum Distance from Property Line that Is or Can Be Built Upon, Including the Opposite Side of a Public Way (ft) | Minimum Distance from Nearest Side of Any Public Way or from Nearest Important Building on the Same Property (ft) |
|---|---|---|
| 275 or less | 5 | 5 |
| 276 to 750 | 10 | 5 |
| 751 to 12,000 | 15 | 5 |
| 12,001 to 30,000 | 20 | 5 |
| 30,001 to 50,000 | 30 | 10 |
| 50,001 to 100,000 | 50 | 15 |
| 100,001 to 500,000 | 80 | 25 |
| 500,001 to 1,000,000 | 100 | 35 |
| 1,000,001 to 2,000,000 | 135 | 45 |
| 2,000,001 to 3,000,000 | 165 | 55 |
| 3,000,001 or more | 175 | 60 |

For SI units, 1 ft = 0.3 m; 1 gal = 3.8 L.



Table 2.3.2.1.2 Stable Liquids [Operating Pressure Greater than 2.5 psig (gauge pressure of 17.2 kPa)]

| Type of Tank | Protection | Minimum Distance in Feet from Property Line that Is or Can Be Built Upon, Including the Opposite Side of a Public Way | Minimum Distance in Feet from Nearest Side of Any Public Way or from Nearest Important Building on the Same Property |
|---|---|---|---|
| Any type | Protection for exposures | $1^{1}/_{2}$ times Table 2.3.2.1.1(b) but shall not be less than 25 ft | $1^{1}/_{2}$ times Table 2.3.2.1.1(b) but shall not be less than 25 ft |
| | None | 3 times Table 2.3.2.1.1(b) but shall not be less than 50 ft | $1^{1}/_{2}$ times Table 2.3.2.1.1(b) but shall not be less than 25 ft |

For SI units, 1 ft = 0.3 m.
[a]See definition 1.6.38, Protection for Exposures.

2008 Edition

Schedules to Dunhill Terminals - Asset Purchase Agreement

Case 10-01342    Doc 11-2    Filed 03/26/10    Entered 03/26/10 20:17:03    Desc Exhibit
A - Part 2    Page 41 of 82



Schedule 3.07(c) – Page 6



**GULF COAST ASPHALT COMPANY**

February 11, 2010

Dunhill Terminals, L.P.
7026 Old Katy Road, Suite 249
Houston, TX 77024
Attn: Ms. Patricia Waters

    RE:   Dunhill's Blakely Island Facility, Mobile, Alabama

Dear Ms. Waters:

    We are happy to inform you that, in anticipation of our acquisition of Dunhill Terminals, Gulf Coast Asphalt Company, LLC has just signed and funded an exclusive option agreement to acquire the property adjacent to the Dunhill Terminals Blakely Island facility currently owned by Argain, LLC. This option is being recorded imminently. The acquisition of the adjacent property is the only way that we could find to avoid having to remove a significant portion of the tankage already constructed at Blakely.

    Additionally, owning this property will allow us to provide a mooring bollard for ships that come to call on the facility, without which, you of course know, Dunhill would be unable to receive the vessels necessary to operate the facility for potential customers.

    Finally, the acquisition of this property will eliminate the problem that Dunhill Terminals has absent an agreement from Argain to allow vessels calling on Dunhill to overhang Argain's property. I'm sure neither of us was looking forward to having to move the dock on top of everything else.

Very truly yours,

GULF COAST ASPHALT COMPANY, L.L.C.

By: _____
    A.J. Brass, President

11 Greenway Plaza, Suite 2950 Houston, TX 77046 Phone: (832) 426-3310 Fax (832) 426-3320

**Schedule 3.07(e)**

**Real Property (ingress and egress)**

None.

## Schedule 3.07(f)

## Easement Areas (ingress and egress)

None.

## Schedule 3.07(i)

## Real Property Taxes

1.  County of Mobile.*

2.  City of Mobile.*

3.  City of Chickasaw.*

*NOTE:  Tax payments in the aggregate amount of $152,000 for Items #1-3.
License renewal fees in the aggregate amount of approximately $3,137.

## Schedule 3.07(j)

## Real Property Compliance with Laws

None.

**Schedule 3.08(b)(ii)**

**Taxes Payable**

See Schedule 3.07(i).

**Schedule 3.08(d)(i)**

**Taxes and Tax Returns**

1. City of Chickasaw, Alabama.

2. City of Mobile, Alabama.

3. County of Mobile, Alabama.

4. State of Alabama.

5. Alabama Business Privilege Tax.

6. State of Alabama Conservation Tax.

7. Alabama.

After closing, taxes and tax returns will not be required on a going-forward basis in the following jurisdictions:

8. Texas Franchise Tax.

9. Ohio

10. Florida

11. Louisiana

12. Mississippi

13. Kentucky

14. Missouri

15. Arkansas

16. Tennessee

17. South Carolina

18. North Carolina

19. Georgia

20. Illinois

21. Pennsylvania

Schedules to Dunhill Terminals - Asset Purchase Agreement

## Schedule 3.08(e)(ii)

### Employment Tax Withholdings

Jurisdictions:

1. Alabama

After closing, employment tax withholdings will not be required on a going-forward basis in the following jurisdictions:

2. Texas
3. Ohio
4. Florida
5. Louisiana
6. Mississippi
7. Kentucky
8. Missouri
9. Arkansas
10. Tennessee
11. South Carolina
12. North Carolina
13. Georgia
14. Illinois
15. Pennsylvania

Schedules to Dunhill Terminals - Asset Purchase Agreement

## Schedule 3.09(a)

## Employment and Labor Matters

1.   Worker's Compensation Claim (threatened) by Mikel Wilson dated January 5, 2010. See attached letter from Mr. Wilson's attorney dated January 5, 2010.

# THIRY & CADDELL
### ATTORNEYS AT LAW

RICHARD L. THIRY
HENRY H. CADDELL

1911 GOVERNMENT STREET
MOBILE, ALABAMA 36606
(251) 479-8881
FAX (251) 478-8888
Writer's Email : [illegible]

January 05, 2010

DUNHILL TERMINALS LP
Post Office Box 1565
Mobile, Alabama 36602

    Re:   Mikel Wilson

To Whom It May Concern:

    Please be advised that this firm represents Mr. Mikel Wilson with regard to a worker's compensation claim he has against Dunhill Terminal.

    Please have the appropriate person or persons contact me about this matter at your earliest convenience after receipt of this letter. If I have not been contacted within 15 days of the date of this letter, I will be filing, without further notice, suit against your company.

                    Sincerely,

                    /s/ Richard L. Thiry
                    Richard L. Thiry
                    Attorney at Law

RLT/ss

# Schedule 3.09(c)

## Employees

| | | | | | | |
|---|---|---|---|---|---|---|
| ASHCROFT, SHAWN | OPERATOR/LOADER | 8/20/2009 | 39.5 | $ | 22,880.00 | ACTIVE |
| BEIRIGER, JENNIFER | RECEPTIONIST | 2/12/2008 | 64 | $ | 33,000.24 | ACTIVE |
| BEIRIGER, JEORGE | SCHEDULER/LOGISTICS | 12/14/2007 | 64 | $ | 45,000.02 | ACTIVE |
| BELL, RUSSELL E. | TERMINAL MANAGER-BLAKELY | 1/29/2007 | 164.2 | $ | 47,999.90 | ACTIVE |
| BUTTS, DANIEL | OPERATOR/LOADER | 3/11/2009 | 72.5 | $ | 39,520.00 | ACTIVE |
| BYRD, TROY | BYRD, TROY | 8/13/2009 | 39.5 | $ | 20,800.00 | ACTIVE |
| CLEVELAND, DWAYNE E. | PLANT MANAGER | 1/30/2007 | 72 | $ | 82,000.10 | ACTIVE |
| DANIEL, TAREQUIS | OPERATOR/LOADER | 5/30/2009 | 59.4 | $ | 29,120.00 | ACTIVE |
| GLEN, STEVEN | OPERATOR/LOADER | 9/25/2009 | 33 | $ | 27,040.00 | ACTIVE |
| HITT, SEAN | OPERATOR/LOADER | 2/9/2009 | 69.8 | $ | 27,040.00 | ACTIVE |
| HOLLIS, KEITH | OPERATOR/LOADER | 5/28/2008 | 72.5 | $ | 29,120.00 | ACTIVE |
| LESSLEY, JAMES T. | OPERATOR/LOADER | 12/26/2007 | 155.6 | $ | 39,520.00 | ACTIVE |
| LUCAS, BRANDY | ACCOUNTING ASSISTANT | 3/3/2008 | | $ | 38,500.00 | ACTIVE |
| MASKE, DOUGLAS C. | HSE MANAGER | 11/5/2007 | 184.8 | $ | 60,000.20 | ACTIVE |
| MEYERS, BRANDON T. | TERMINAL MANAGER-CHICKASAW | 11/12/2007 | 176.2 | $ | 47,999.90 | ACTIVE |
| PENDARVIS FR., STEPHEN | OPERATOR/LOADER | 11/30/2009 | 19.8 | $ | 31,200.00 | ACTIVE |
| PUGH, THADDEUS W. | OPERATOR/LOADER | 2/20/2008 | 110.4 | $ | 31,200.00 | ACTIVE |
| RENTZ, ROBERT A. | HSE ASST | 6/11/2008 | 60 | $ | 46,999.94 | ACTIVE |
| ROBINSON, JOSEPH | OPERATOR/LOADER | 9/3/2009 | 39.5 | $ | 39,520.00 | ACTIVE |
| SHIVER, CHRISTOPHER L. | OPERATOR/LOADER | 1/28/2008 | 107 | $ | 39,520.00 | ACTIVE |
| SMITH, CURTIS L. | OPERATOR/LOADER | 8/20/2007 | 134 | $ | 39,520.00 | ACTIVE |
| SUMMERLIN, RAYFORD | MAINTENANCE | 12/15/2008 | 52.4 | $ | 39,520.00 | ACTIVE |
| WINDHAM, HOLLEY | ADMIN ASST | 9/8/2008 | 118.8 | $ | 27,040.00 | ACTIVE |

## Schedule 3.10

## Change or Event

None.

## Schedule 3.11(a)

## Compliance with Law

1.    See Schedule 3.12(a), Item #1 for OSHA Claim.

2.    Compliance issues at Chickasaw:

Drains

  1. Drains are plagued with sediment runoff and contamination from previous spills.

  2. Approximately 50% of the drains do not have grates.

Paving the parking lot will accomplish several goals;

  1. It will allow us to file for termination of the Construction NPDES Permit.

  2. Eliminate the sediment runoff to both Viaduct Rd. and the adjoining wetlands.

  3. Reduce the amount of dirt truck traffic brings onto the truck rack. Which gets washed into the OWS causing it to clog and operate poorly.

Default bills affect;

  1. Unable to repair or replace de-railers

  2. Safety Supplies

  3. Unable to replace defective or worn hoses

  4. Unable to test hoses.

  5. Couplings, inserts for pumps.

Hoses

  1. Hoses are out of their test dates.

  2. Steam hoses are in poor repair and are dangerous.

  3. Transfer hoses at the truck rack are in disrepair and dangerous.

Impermeable liner.

  1. The permeable standard for the tank farm diking system has not been obtained.

TWIC Cards

  1. Several employees do not have TWIC Cards.

Training that has to be performed but outside our expertise.

Schedules to Dunhill Terminals - Asset Purchase Agreement

    1. First Aid

    2. Haz-Mat

Fire Hydrants are not up to fire code.

    1. They need extensions to raise them higher above the ground.

    2. Need a AFFF Inductor

    3. Need more dedicated fire hoses.

Putting AFFF on TK17

VCU needs a ZINC Technician to finish and properly light off.

Rail spur needs lights.

Fence truck rack lot.

3. Compliance issues at Blakeley:

NPDES Construction permit deficiencies.

    1. Hole in the fence.

    2. BMP issues with silt fencing and runoff.

    3. Fence is laid over from sediment buildup.

Dock needs repair from allision damage

Dock needs a dock shack for transfers.

Dock hoses are out of test date.

Anchors DO NOT have a permit from ACOE.

    1. These three anchors should be removed immediately. They do not conform to any ISGOTT standard. Pilings should be put in their place.

Impermeable liner.

    1. The permeable standard for the tank farm diking system has not been obtained.

Dredging

    1. Need to complete another 100' X 38' of dredging.

Existing piling need repair and inspection.

    1. Holes in the sheet piles have caused erosion of sand in the piling.

**Schedule 3.11(b)**

**Permits**

See Schedule 1.01(a)(iv).

## Schedule 3.12(a)

### Environmental Matters

1.   See attached Letter from the U.S. Department of Labor, Occupational Safety & Health Administration, dated March 2, 2010, Complaint Number 206976730 (the "OSHA Claim") and Dunhill Terminals response.

*Description of the Claim*

The complaint was initiated as a result from a spill of Liqrene D. Dunhill Terminals ("Terminals") immediately responded to the complaint by issuing a mitigation letter and submitting supporting documentation that should prove employees were properly trained and were given the proper PPE to perform such duties. The supporting documentation is copies of training reports, drills, and invoices from where Terminals purchased PPE and documents where employees had signed for PPE. At this time, OSHA does not plan to issue a Letter of Violation or an inspection. Terminals is currently waiting for OSHA to review the Mitigation Letter and supporting pictures and evidence Terminals has submitted.

Schedules to Dunhill Terminals - Asset Purchase Agreement

U. S. DEPARTMENT OF LABOR
OCCUPATIONAL SAFETY & HEALTH ADMINISTRATION
1141 Montlimar Drive, Suite 1006
Mobile, AL 36609
PHONE: (251) 441-6131
FAX: (251) 441-6396

March 2, 2010

Dunhill Terminals
Attention: Brandy Lucas
458 Government Street
Mobile, AL 36602

Re: Complaint No. 206976730

Dear Mrs. Lucas:

On March 2, 2010, the Occupational Safety and Health Administration (OSHA) received a notice of safety and/or health hazards at your worksite at:

500 Viaduct Road
Mobile, AL 36602

We notified you, by telephone, of these alleged hazards on March 2, 2010. The specific nature of the alleged hazards is as follows:

The employer required employees to clean up a chemical spill that occurred on 2/24/10. A hose running from a rail car to an on site storage tank failed, allowing approximately 200 - 300 gallons of chemical to be spilled on the ground.

1. The employer did not provide chemical cleanup operations training.

2. The employer has not provide hazardous communications training.

3. The employer did not provide personal protective equipment for employees involved in the chemical clean up.

We have not determined whether the hazards, as alleged, exist at your workplace; and we do not intend to conduct an inspection at this time. However, since allegations of violations and/or hazards have been made, we request that you immediately investigate the alleged conditions and make any necessary corrections or modifications. Please advise me in writing, no later than

March 10, 2010 of the results of your investigation. You must provide supporting documentation of your findings, including any applicable measurements or monitoring results, and photographs/video which you believe would be helpful, as well as a description of any corrective action you have taken or are in the process of taking, to correct the hazardous conditions including the date of this action. Please fax us your response if possible, to 251-441-6396.

This letter is not a citation or a notification of proposed penalty which, according to the OSH Act, may be issued only after an inspection or investigation of the workplace. It is our goal to assure that hazards are promptly identified and eliminated. Please take immediate corrective action where needed. We encourage employee participation in investigating and responding to any alleged hazard. However, if we do not receive a response from you by March 10, 2010 indicating that appropriate action has been taken or that no hazard exists and why, an OSHA inspection will be conducted. An inspection may include a review of the following: injury and illness records, hazard communication, personal protective equipment, emergency action or response, bloodborne pathogens, confined space entry, lockout and related safety and health issues.

Please note, however, that OSHA selects for inspection some cases where we have received letters in which employees have indicated satisfactory corrective action. This is to ensure that employers have actually taken the action stated in their letters.

The State of Alabama offers OSHA consultation services, without charge, to assist in resolving all occupational safety and health issues. The variety of services available or the scheduling of those services may be limited by the consultation project's requirement to give priority to small businesses in high hazard industries and by its backlog. To discuss or request the services, call or write your consultation project at the following address:

Safe State
University of Alabama
College of Continuing Studies
Box 870388
Tuscaloosa, AL 35487-0388
PHONE: 1-800-452-5928

However, you may be able to obtain similar services from your insurance carrier or private consultant in a more timely fashion. Safe State has compiled a list of some of the safety and health consultants that offer various services in our area. A copy of the list may be obtained by contacting Safe State or the Mobile OSHA Office.

You are requested to post a copy of this letter where it will be readily accessible for review by all of your employees and return a copy of the signed Certificate of Posting (Attachment A) to this office. Also, you are requested to provide a copy of this letter and your response to it to a representative of any recognized employee union or safety committee if these are at your facility. Failure to do this may result in an on-site inspection. When appropriate, the

2

complainant will be furnished a copy of this letter and will be advised of your response. Section 11(c) of the OSH Act provides protection for employees against discrimination because of their involvement in protected safety and health related activity.

**PLEASE INDICATE IN YOUR ABATEMENT LETTER TO MOBILE AREA OFFICE THE ACTUAL DATE YOU ABATED EACH ITEM OF THE COMPLAINT.** If you are unable to abate or control the alleged hazards addressed in this letter by March 10,2010, you must notify our office of the protective measures that your company will utilize to protect employees during the interim period while the items are evaluated and/or abated.

If you have any questions concerning this matter, please contact the Area Office at the address in the letterhead. Your personal support and interest in the safety and health of your employees is appreciated.

Sincerely,

Kurt A. Petermeyer
Area Director

Attachment A

# CERTIFICATE OF POSTING
## OSHA NOTIFICATION OF ALLEGED HAZARD(S)

Employer Name: Dunhill Terminals

Complaint Nr: 206976730

Date of Posting: 03 MAR 2010

Date Copy Given to
an Employee Representative: 03 MAR 2010

On behalf of the employer, I certify that a copy of the complaint letter received from the Occupational Safety and Health Administration (OSHA) has been posted in a conspicuous place, where all affected employees will have notice, or near such location where the violation occurred, and such notice has been given to each authorized representative of affected employees, if any. This notice was or will be posted for a minimum of ten (10) working days or until any hazardous conditions found are corrected.

_R. Corey Mosh_
Signature

_HSE Manager_
Title

4

Schedule 3.12(a) – Page 5

Schedules to Dunhill Terminals - Asset Purchase Agreement

March 2, 2010


U.S. Department of Labor
Occupational Safety & Health Administration
1141 Montlimar Drive, Suite 1006
Mobile, AL 36609
Phone: (251) 441-6131
Fax: (251) 441-6396

Dunhill Terminals, LP
500 Viaduct Rd
Chickasaw, AL 36611
Phone: (251) 452-6144
Fax: (251) 452-7197


Re: Complaint No. 206976730

Dear Sir or Madam;

I am in receipt of your Complaint No. 206976730. We are concerned about the safety and welfare of each of our employees and welcome any opportunity to improve safety at our facility. Upon receipt of this complaint we have reviewed the allegations and take each seriously. Each employee receives a minimum amount of safety training before he/she can perform those duties on their own.

The complaint was initiated from a spill that occurred on 25February2010 at approximately 0200 hrs. The spill was the result of two separate incidents. One, the railcar apparently "burped" through the hatch and the fitting connecting the railcar failed causing approximately 150 gallons of Ligrone D to spill onto the truck rack containment area. Ligrone D is not a hazardous substance as defined in the 49 CFR 172.101 tables.

1. The employer did not provide chemical clean up operations training.
   a. Dunhill utilizes several methods for instructing employees on how to safely clean small spills. An instructional video followed up by discussion and a test provide each employee basic instructions for identifying the hazards, stopping the leak at the source and gathering info about the material from labels, markings, or MSDS. This includes Health Hazards, First Aid, and Emergency Procedures. It also discusses PPE, controlling the spill, and above all, clean up.
   b. Another way we train our employees is through quarterly drills. SPCC Drills and FRP drills. These drills are designed to test the operator's ability to respond to a specific type of emergency and perform emergency shutdown procedures.
2. The employer has not provided hazardous communications training.
   a. Each employee receives this though both instructional video and discussion followed by testing. Additionally,


Schedule 3.12(a) – Page 6

      b. An MSDS Station is posted directly outside the main office entrance and tabbed according to tank number. MSDS's can be located in the dock shack's, Dock Operations Manual on the dock and the Hazardous Communication Plan.

      c. Movement orders are provided for each transfer and list the proper shipping name.

      d. All railcars and trucks are placarded and the tanks are placarded with the NFPA Hazard Class. Employees receive even further instructional video on Warning Labels and Placards and HazCom. Both accompanied by testing.

3. The employer did not provide personal protective equipment for employees involved in the chemical clean up.

      a. Enclosed are receipts from Gulf Supply a local safety supply company. This should show we purchase in great quantities, gloves, hardhats, eye protection, and rubber boots, that we provide our employees so they can perform their job safely.

      b. PPE Training is also taught by instructional video and followed up by discussion and testing.

      c. Employees must sign that they are in receipt of safety equipment.

With that said, this investigation has noted some deficiencies.

1. Training has not been enforced 100%. Records have been pulled and employees identified to have insufficient training as required above are being scheduled for training.

2. Although PPE has been issued on a regular basis it is not always enforced by supervisors on evening and night shift due to visibility. Routine checks will be performed by the HSE Manager or his representative to ensure full compliance.

Lignene D is a waxy substance made from tree pulp. Just because it's not a hazardous substance doesn't mean it is without hazard. Employees needed only basic cleanup methods to clean the spill. They used a shovel, squeegee, and a power washer to clean the surface area. Operators only needed minimum PPE to effect cleanup, such rubber boots, gloves, hard hat and a safety shield.

In conclusion, It is my goal to keep our employees safe and we will make our best effort to improve training and maintain a higher quality of safety.

Sincerely,

*D. Corey Manke*

D. Corey Manke
HSE Manager

## Schedule 3.13(b)(i)

## Assigned Contract Defaults

1. All of Seller's tank tenants to a certain extent are late on rent payment; and with the passage of time all tenants could be in default of the Master Storage Agreement.

2. Specialty Fuels is in default of its obligations under its agreement with Dunhill Terminals.

3. Dunhill Terminals is in default of its obligations under its agreement with PetroChina.

4. Dunhill Terminals is in default of its obligation under its lease agreement with the landlord, Delta Hardwoods Corporation.

Schedules to Dunhill Terminals - Asset Purchase Agreement

# Schedule 3.13(b)(ii)

## Storage Tank Expiration Dates

The following tables summarize Terminals current rent roll and projected rent roll. Highlighted items represent current/active leases:

### CHICKASAW TERMINAL

| | | | | | Estimated Revenue | | Contract Term | | |
|---|---|---|---|---|---|---|---|---|---|
| 30-02 | Mead Westvaco | Executed | 30,000 | $0.60 | *[illegible]* | 758,200 | 5 Years | *[illegible]* | *[illegible]* |
| 30-03 | Mead Westvaco | Pending | 30,000 | $0.72 | 21,600 | 259,200 | 1 Year | 7/27/09 | 7/27/10 |
| 30-05 | Mead Westvaco | Executed | 30,000 | $0.68 | 20,400 | 244,800 | 5 Years | 10/1/08 | *[illegible]* |
| 30-06 | Mead Westvaco | Executed | 30,000 | $0.60 | *[illegible]* | *[illegible]* | 5 Years | 7/30/07 | 7/29/10 |
| 30-07 | Mead Westvaco | Executed | 30,000 | $0.68 | 20,400 | 244,800 | 5 Years | 10/1/08 | *[illegible]* |
| 30-09 | Specialty Fuels | Executed | 30,000 | $0.68 | 20,400 | 244,800 | 5 Years | 10/1/08 | 10/1/13 |
| 30-21 | Specialty Fuels | Executed | 30,000 | $0.68 | 20,400 | 244,800 | 5 Years | 10/1/08 | 10/1/13 |
| 30-22 | Specialty Fuels | Executed | 30,000 | $0.68 | 20,400 | 244,800 | 5 Years | 10/1/08 | 10/1/13 |
| 30-23 | Specialty Fuels | Executed | 30,000 | $0.68 | 20,400 | 244,800 | 5 Years | 10/1/08 | 10/1/13 |
| 30-11 | Commercial Carbon | Executed | 30,000 | $0.75 | 22,500 | 270,000 | 5 Years | *[illegible]* | *[illegible]* |
| 30-12 | Commercial Carbon | Executed | 30,000 | $0.75 | 22,500 | 270,000 | 5 Years | 7/15/07 | 7/15/12 |
| 30-10 | Specialty Fuels | Executed | 30,000 | *[illegible]* | *[illegible]* | 240,000 | 5 Years | 10/1/08 | 10/1/13 |

## Notes:

(1) Escalation of base fee charge based on change in Consumer Price Index, for last two calendar years.

(2) Facility clean surcharge not to exceed $50,000 for Mead Westvaco.

(3) Mead Westvaco will be charged $0.80/bbl in excess of 4 turns of throughput via truck or rail tank cars; others are charge a per barrel fee based on overage of throughput.

(4) Certain leases include a per barrel charge for (un)loading by truck or rail.

(5) John W. Stone and Specialty Fuels have agreed to pay cost +15% for other mutually agreed upon services provided by tank.

(6) PetroChina has executed a Master Storage Agreement, which is not yet effective because the facility lacks proper equipment to support customer.

Schedules to Dunhill Terminals – Asset Purchase Agreement

**Schedule 3.14**

**Insurance**

1.     Policy Number:     EPR NO 50 85 500
   Underwriter:     AmWINS Brokerage/ACE American Insurance Company
   Period:     11/21/2009 – 12/21/2010
   Policy Type:     Property (Terminal Facility)
   Limits:     Property Damage:     $44,761,000
       Business Interruption:     $11,958,460

2.     Policy Number:     53089542
   Underwriter:     AmWINS Brokerage/National Union Fire Insurance Company of Pittsburgh, PA
   Period:     11/21/2009 – 12/21/2010
   Policy Type:     Property
   Limits:     Property Damage:     $44,761,000
       Business Interruption:     $11,958,460
       Course of Construction:     $ 7,500,000

Note: The following policies cover various assets of Sellers and include coverage of non-Seller assets:

3.     Policy Number:     MASIHAT0001109
   Underwriter:     Starr Indemnity & Liability Company
   Period:     9/13/2009 – 9/13/2010
   Policy Type:     Hull & P-I
   Limits:     Hull Damage:     As insured value
       P-I:     $1,000,000 per occurrence

4.     Policy Number:     MASILAT00004109
   Underwriter:     Starr Indemnity & Liability Company
   Period:     9/13/2009 – 9/13/2010
   Policy Type:     Commercial marine Liability & Terminal Operator's
   Limits:     Combined single limit:     $1,000,000

5.     Policy Number:     MASILAT00004209
   Underwriter:     Starr Indemnity & Liability Company
   Period:     9/13/2009 – 9/13/2010
   Policy Type:     Bumbershoot Liabilities
   Limits:     SEE BUMBERSHOOT LIMITS ATTACHMENT

6.     Policy Number:     EPG: 06042-03
   Underwriter:     Environmental Pollution Group (EPG)
   Period:     9/13/2009 – 9/13/2010

| | | | |
|---|---|---|---|
| | Policy Type: | Pollution | |
| | Limits: | Limit of Liability: | $5,000,000 |

7.
| | | | |
|---|---|---|---|
| | Policy Number: | 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 | |
| | Underwriter: | Granite State Insurance Company | |
| | Policy Period: | 3/22/2009 – 3/22/2010 | |
| | Policy Type: | Workers Compensation and Employers Liability | |
| | Limits: | Aggregate: | $1,000,000,000,000 |

8.
| | | | |
|---|---|---|---|
| | Policy Number: | BA-4847C458-09-SEL | |
| | Underwriter: | Travelers | |
| | Period: | 5/16/2009 – 5/16/2010 | |
| | Policy Type: | Auto | |
| | Limits: | Max. per accident: | $1,000,000 |

9.
| | | | |
|---|---|---|---|
| | Policy Number: | B040110259X09 | |
| | Underwriter: | Lloyd's of London | |
| | Period: | 12/5/2009 – 12/5 2010 | |
| | Policy Type: | Cargo | |
| | Limits: | Any one conveyance: | $10,000,000 |

10.
| | | |
|---|---|---|
| | Policy Number: | EPR NO5085500 |
| | Underwriters: | American Insurance Company & National Union Fire of Pittsburgh, PA |
| | Period: | 11/21/2009 – 11/21/2010 |
| | Policy Type: | Property |
| | Limits: | SEE PROPERTY LIMITS ATTACHMENT |

11.
| | | | |
|---|---|---|---|
| | Policy Number: | UM00018841EL08A-S | |
| | Underwriter: | XL Specialty Insurance Company | |
| | Period: | 9/13/2009 – 9/13/2010 | |
| | Policy Type: | Marine Excess Liability | |
| | Limits: | | $40,000,000 |

## DECLARATIONS

| | |
|---|---|
| **POLICY NUMBER:** | RPK N0315509 |
| **NAMED INSURED:** | DUNHILL TERMINALS, L.P. |
| **MAILING ADDRESS:** | 150-C GOVERNMENTAL MOBILE, AL 36602 |
| **LOSS PAYABLE CLAUSE:** | LOSS, IF ANY, TO BE ADJUSTED WITH AND PAYABLE TO INSURED, WHOSE RECEIPT SHALL CONSTITUTE A RELEASE IN FULL OF ALL LIABILITY UNDER THIS POLICY AS REGARDS SUCH LOSS. |
| **TERM OF INSURANCE:** | FROM 01/21/2009 TO 01/21/2010 AT 12:01 A.M. STANDARD TIME AT THE ABOVE MAILING ADDRESS |
| **PREMIUM:** | $335,315 |
| **LIMIT OF LIABILITY:** | THE LIMIT OF LIABILITY UNDER THIS POLICY SHALL IN NO EVENT EXCEED THE AMOUNT SHOWN BELOW FOR ANY ONE ACCIDENT OR DISASTER OR ANY ONE SERIES OF ACCIDENTS OR DISASTERS ARISING OUT OF ANY ONE OCCURRENCE. |
| **POLICY LIMIT OF LIABILITY:** | $55,000,000 (BPW)     PER OCCURRENCE |
| **STARR TECH PARTICIPATION:** | 45%, THAT BEING $25,000,000 PART OF $55,000,000 |
| **SUBLIMITS:** | SUBLIMITS ARE PER OCCURRENCE UNLESS SHOWN OTHERWISE. THE SUBLIMITS BELOW ARE PART OF AND NOT IN ADDITION TO THE POLICY LIMIT OF LIABILITY. SUBLIMITS ARE 100% AND ARE SUBJECT TO STARR TECH PERCENTAGE PARTICIPATION. |

| | | |
|---|---|---|
| **BUSINESS INTERRUPTION:** | $21,958,463 | |
| **EARTHQUAKE/EARTH MOVEMENT,** Except: | $5,000,000 | ANNUAL AGGREGATE |
| **CALIFORNIA EARTHQUAKE/EARTH MOVEMENT:** | NO COVERAGE | |
| **FLOOD:** | $25,000,000 | ANNUAL AGGREGATE |
| **NAMED WINDSTORM AND RESULTING FLOOD:** | $50,000,000 | ANNUAL AGGREGATE |
| **CIVIL/MILITARY AUTHORITY:** | 2 CONSECUTIVE WEEKS | |
| **CONTINGENT BUSINESS INTERRUPTION (NAMED):** | $500,000 | |
| **CONTINGENT EXTRA EXPENSE:** | $250,000 | |
| **COURSE OF CONSTRUCTION:** | $7,500,000 | |

STARR 360 DECLARATIONS
PAGE 1 of 3

| TIMBER REMOVAL: | THE GREATER OF 25% OF ADJUSTED DIRECT PROPERTY LOSS OR $5,450,000 |
| DEMOLITION & INCREASED COST OF CONSTRUCTION: | $75,450,000 |
| EDP EQUIPMENT & MEDIA: | $108,400 |
| ERRORS AND OMISSIONS: | $1,500,000 |
| EXPEDITING EXPENSE: | $500,000 |
| EXTRA EXPENSE: | $2,450,000 |
| INGRESS/EGRESS: | $500,000 |
| LEASED & RENTED EQUIPMENT: | $3,000,000 |
| MISCELLANEOUS UNNAMED LOCATIONS: | |
| NEWLY ACQUIRED PROPERTY: | $500,000 |
| POLLUTION CLEANUP: | $2,500,000 |
| PROFESSIONAL FEES: | $250,000 | ANNUAL AGGREGATE |
| PROTECTION AND PRESERVATION OF PROPERTY: | $250,000 |
| RENTAL VALUE: | $350,000 |
| SERVICE INTERRUPTION/OFF PREMISES POWER: | $250,000 |
| TRANSIT INLAND: | $1,000,000 |
| VALUABLE PAPERS AND RECORDS: | $500,000 |
| | $100,000 |

DEDUCTIBLES: ALL DEDUCTIBLES LISTED BELOW ARE PER OCCURRENCE EXCEPT WITH RESPECT TO COVERAGE PROVIDED UNDER THE BOILER & MACHINERY ENDORSEMENT (IF PROVIDED) WHICH SHALL BE ANY ONE ACCIDENT.

| PROPERTY DAMAGE: | $100,000 | EXCEPT |
| EARTHQUAKE: | $100,000 | |
| FLOOD: | $100,000 | EXCEPT |
| FLOOD PER B-ZONE A,V EXCLUDING STORM SURGE (INCLUDING SUBZONES): | 2% OF THE TOTAL INSURABLE VALUES AT RISK PER LOCATION SUBJECT TO A MINIMUM OF $250,000 PER OCCURRENCE |
| NAMED WINDSTORM: | 2% OF THE TOTAL INSURABLE VALUES AT RISK PER LOCATION SUBJECT TO A MINIMUM OF $250,000 PER OCCURRENCE |
| PROPERTY IN TRANSIT: | $50,000 |
| LEASED OR RENTAL EQUIPMENT | $25,000 |
| EDP EQUIPMENT & MEDIA: | $50,000 |

Schedule 3.14 – Page 4

Schedules to Dunhill Terminals - Asset Purchase Agreement



# STARR ✦ MARINE

EFFECTIVE: INDIAML, SEPTEMBER 15, 2009.
ATTACHED TO AND FORMING PART OF POLICY NO.: MASBLAT09894160.
OF THE: STARR INDEMNITY & LIABILITY COMPANY.
ISSUED TO: DUNHILL TERMINALS LP ET AL.

## SCHEDULE OF UNDERLYING INSURANCE

| COVERAGE | EFF. DATE | LIMIT(S) | CARRIER / POLICY NO. |
|---|---|---|---|
| Commercial General Liability / Products / Completed Operations / Marine Terminal Operator's Liability / Stipperator's Liability | 09/15/09-10 | $1,000,000 Each Occ., CSL $2,000,000 Gen Aggregate $1,000,000 Pers. & Adv. Injury $1,000,000 Prod Comp Ops | Starr Indemnity & Liability Company Policy No.: MASBLAT09894160 |
| Auto Liability (2 policies) | TBD | $1,000,000 per occurrence CSL | Travelers Insurance Policy No: TBD Policy No.: TBD |
| Worker's Compensation | 3/22/08-10 | Statutory | Commerce & Industry Policy No: 2958021 |
| Employers Liability | 3/22/09-10 | $1,000,000 / $1,000,000 / $1,000,000 | Commerce & Industry Policy No.: 2958021 |
| Maritime Employer's Liability | 3/22/09-10 | $1,000,000 each accident / Basis | Commerce & Industry Policy No.: 2958021 |
| Vessel Pollution | TBD | $3,000,000 Coverage A / $5,000,000 Coverage B | Carrier: WQIS Policy No: TBD |
| Protection & Indemnity | 09/15/09-10 | $1,000,000 per occurrence CSL | Starr Indemnity & Liability Company Policy No.: MASBLAT09811899 |
| Builder's Risk Protection & Indemnity | 5/8/09-1/8/09 | $1,000,000 per occurrence CSL | National Liability & Fire Insurance Company Policy No.: HATR003472008 |

ALL OTHER TERMS, CONDITIONS, RESTRICTIONS AND EXCLUSIONS REMAIN UNCHANGED.

**Schedule 3.15**

**Seller's Knowledge**

1.  Henry Wuertz

2.  Steven Frietsch

3.  Scott Cleveland

4.  Stryker Emmerton

5.  Patricia Waters

6.  Dwayne Cleveland

## Schedule 3.18(a)

## Sufficiency of Assets

1.     None.

## Material Repairs

Chickasaw:

1. Tank #1 - steam coils repaired, pump repaired , pipe realigned
2. Tank#2 - finish steam pipe to header.
3. Tank#3 - finish steam pipe to header
4. Tank#4 - pump seal repaired
5. Tank #5 - steam trap installed
6. Tank #6 - steam coils repaired, pump seal repaired
7. Tank# 7 - needs steam trap
8. Tank# 8 - needs steam trap
9. Tank #9 - pump seal repaired
10. Tank #10 - pump seal repaired
11. Tank# 11 - ok
12. Tank #12 - pump seal repaired
13. Tank# 13 - ok
14. Tank#14 - needs steam trap
15. Tank# 15 - ok
16. Tank # 16 - ok
17. Tank # 17 - ok
18. Liner installed or concrete inside containment area
19. Truck loading/unloading needs paving
20. Scales entrance/exit ramps repaired to meet code
21. Boiler repaired to meet code
22. OWS cleaned and repaired
23. Fence installed around truck loading/unloading area for USCG compliance
24. Rail spur on south side of viaduct rd needs drain installed or some type of soil stabilization

Schedules to Dunhill Terminals - Asset Purchase Agreement

## Schedule 3.19

### Substantial Customers

1.   See Schedule 1.01(a)(v).

2.   See Schedule 3.13(b)(ii).

3.   Mead Westvaco South Carolina, LLC.

**Schedule 3.20**

**Brokers or Finders**

None.

## Schedule 6.01(a)

### Governmental Approvals

1.  It is anticipated that all permits and licenses need government approval, see Schedule 1.01(a)(iv).

2.  It is anticipated that the tax abatements with respect to the Sellers for the County of Mobile and the City of Chickasaw will require government approval.

Schedules to Dunhill Terminals - Asset Purchase Agreement

## Schedule 6.02(g)

## Consents and Approvals (Sellers)

1.   See Schedule 6.01(a).

2.   See Schedule 1.01(a)(v).  The Master Storage Agreement by and between Dunhill Terminals, L.P. and each of its tenants contain the following provisions: (i) Termination - the occurrence and continuation of, among others, bankruptcy, with respect to a party shall constitute good cause for immediate termination of the agreement by either party upon written notice to the other party, and (ii) Assignment – the agreement cannot be assigned or transferred in whole or in part by either party or by law without the prior written consent of the other party.

3.   See Schedule 1.01(a)(v), Item #3.

## Schedule 6.03(d)

## Consents and Approvals (Buyer)

1.     See Schedule 1.01(a)(iv).

2.     See Schedule 1.01(a)(v).

Schedules to Dunhill Terminals - Asset Purchase Agreement

**Schedule 8.03(a)**

**Collateral**

1. Security Agreement dated as of November 21, 2007 executed by Dunhill Entities, L.P., Dunhill Terminals, L.P. and certain subsidiaries signatory thereto in favor of Regions Bank, as Administrative Agent.

2. Pledge Agreement dated as of November 21, 2007 executed by Dunhill Entities, L.P., Dunhill Terminals, L.P. and the owners of general and limited partnership interest of Dunhill Entities, L.P. and Dunhill Terminals, L.P., in favor of Regions Banks, as Administrative Agent.

3. Depository Agreement dated as of November 21, 2007 among Dunhill Terminals, L.P., Dunhill Entities, L.P., as borrowers, Regions Bank, as Administrative Agent, and Regions Bank, as Depository Bank.

4. Mortgage, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing dated as of November 21, 2007 by Dunhill Entities, L.P. to Regions Bank recorded in the Office of the Judge of Probate of Mobile County, Alabama as document number 2007097322 in Book 6306, Page 400.

5. Leasehold Mortgage, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing dated as of November 21, 2007 by Dunhill Terminals, L.P. to Regions Bank recorded in the Office of the Judge of Probate of Mobile County, Alabama as document number 2007097320 in Book 6306, Page 374.

6. Blocked Account Agreement dated as of November 21, 2007 by and among Texas Community Bank, N.A., Dunhill Terminals, L.P., Dunhill Entities, L.P. and Regions Bank, as Administrative Agent.

7. Texas Community Bank Blocked Account Agreement dated as of November 21, 2007 by and among Texas Community Bank, N.A., Dunhill Terminals, L.P. and Regions Bank, as Administrative Agent.

8. Mortgage, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing dated as of July 31, 2009 by Dunhill Entities, L.P. to Regions Bank recorded in the Office of the Judge of Probate of Mobile County, Alabama as document number 2009056212 in Book 6575, Page 1593.

9. Leasehold Mortgage, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing dated as of July 31, 2009 by Dunhill Terminals, L.P. to Regions Bank recorded in the Office of the Judge of Probate of Mobile County, Alabama as document number 2009056213 in Book 6575, Page 1613.

10.   Security Agreement dated as of July 31, 2009 executed by Dunhill Entities, L.P., Dunhill Terminals, L.P. in favor of Regions Bank.

Schedules to Dunhill Terminals - Asset Purchase Agreement