UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| In re:<br><br>DUNHILL ENTITIES, L.P.;<br>DUNHILL ENTITIES GP, LLC;<br>DUNHILL TERMINALS, L.P.; AND<br>DUNHILL TERMINALS GP, LLC;<br><br>Debtors. | Chapter 11<br><br>Bankruptcy No. 10-01342;<br>Bankruptcy No. 10-01346;<br>Bankruptcy No. 10-01345; and<br>Bankruptcy No. 10-01350.<br><br>JOINT ADMINISTRATION REQUESTED<br><br>**EXPEDITED HEARING REQUESTED** |

EMERGENCY MOTION OF DEBTOR FOR ORDER APPROVING
USE OF CASH COLLATERAL AND RELATED RELIEF AND SETTING
FINAL HEARING AND PRESCRIBING FORM AND MANNER OF NOTICE

Now comes Dunhill Entities, LP, Dunhill Entities GP, LLC, Dunhill Terminals, LP, and Dunhill Terminals GP, LLC, (collectively the "Debtor"), and moves the Court for entry of an interim order, on an emergency basis, pursuant to sections 105 and 363 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) authorizing the Debtor to use cash collateral of Arc Terminals, L.P., successor to Regions Bank (the "Lender"), by virtue of that certain Sale and Assignment Agreement dated February 26, 2010, pursuant to 11 U.S.C. § 363(c)(2); (ii) authorizing Debtor to grant Lender first priority post-petition liens on and security interests in all of the property of the estate described herein to secure the use of cash collateral to the extent necessary to adequately protect Lender against any diminution in the value of its collateral from the date of the filing of this bankruptcy proceeding through April 23, 2010; (iii) authorizing Debtor to provide adequate protection payments to Lender pursuant to this motion; (iv)

approving the use of cash collateral on an interim basis pending final approval (the "Interim Order"); (v) setting procedures for providing appropriate notice of the foregoing; and (vi) granting other related relief. In support thereof, Debtor represents as follows:

## Summary

1. By this Motion, Debtor seeks interim authority to use the cash collateral of Lender. As indicated in more detail below, Lender and Debtor agree, after substantial investigation including title and UCC-1 searches, that Lender has a valid, binding, first and prior, duly perfected and unavoidable lien and security interest in all of Debtor's assets, including the Debtor's cash collateral and accounts receivable (the "Prepetition Collateral"). The cash collateral and accounts receivable of Debtor are the only sources of financing available to Debtor, and Debtor was unable to secure other debtor-in-possession financing on better terms. The Lender's predecessor was Debtor's primary working capital lender prior to the Petition Date and had a security interest in all of Debtor's assets. Because of that prior relationship, Debtor is unable to obtain financing from other sources and now requires the use of Lender's collateral to fund the post-petition operations of Debtor.

2. Debtor's use of cash collateral is essential, in that Debtor needs all of its cash on deposit with Lender and elsewhere and funds generated by the collection of its accounts receivable to pay for Debtor's post-petition operating expenses.

3. Specifically, Debtor must be able to use cash collateral to pay for all necessary post-petition operating expenses including wages, commissions, taxes, utilities, leases, professionals and other normal and necessary operating expenses of its operations.

4. Approval of the use of cash collateral is necessary to enable Debtor to pay essential operating costs. Absent the availability of cash collateral, Debtor will not be able to

sufficiently operate or pay for the services that are essential to the preservation of the going-concern value of its business.

## Background

5. <u>Chapter 11 filing</u>. On the date hereof (the "Petition Date"), Debtor filed a voluntary petition in this Court for reorganization relief pursuant to Chapter 11 of the Bankruptcy Code. Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. <u>Business Operations of Debtor</u>. The Debtors own and operate petroleum and other petrochemical product storage facilities located in Chickasaw, Alabama and Mobile, Alabama. Debtor's assets include cash, real estate, machinery and equipment, inventory, work-in-process, materials, accounts receivable, insurance claims, and litigation claims.

7. <u>Creditors' Committee</u>. No creditors' committee has yet been appointed by the United States Bankruptcy Administrator.

8. <u>Jurisdiction</u>. The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 157(b)(2). Venue in this District and this motion are proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 363, 1107(a) and 1108 of the Bankruptcy Code.

## Debtor's Prepetition Financing

9. <u>The Prepetition Loan Documents</u>. Debtor and the Lender's predecessor had entered into certain loan arrangements evidenced by, among other things, certain promissory notes and related documents and instruments evidencing, securing, or otherwise related to the indebtedness of Debtor (hereinafter, collectively with all other related documents, the "Loan

Documents"). All of the obligations evidenced by and contemplated in the Loan Documents were purchased by and assigned to the Lender on February 26, 2010.

10. Upon information and belief, Lender alleges that the amount due under the Loan Documents as of the Petition Date (collectively, the "Prepetition Indebtedness") not less than $58,350,000.

11. <u>Prepetition Collateral</u>. Debtor acknowledges that the Prepetition Indebtedness is secured by a valid, binding, first and prior, duly perfected and unavoidable security interset in substantially all of Debtor's assets, including real estate, accounts, accounts receivable, insurance claims, litigation claims, material, inventory, furniture, fixtures and equipment of Debtor.

12. For several months, Debtor has negotiated extensively with Lender's predecessor and its unsecured creditors to restructure its obligations. However, pressure from the financial covenants contained in Loan Documents as amended and from unsecured creditors (including numerous lawsuits) have forced Debtor to seek protection pursuant to Chapter 11 of the Bankruptcy Code in an effort to sell substantially all of its assets in an orderly fashion.

13. <u>Debtor's Urgent Need for Use of Cash Collateral</u>. As of the Petition Date, Debtor has insufficient unencumbered cash on hand to operate without the use of the cash on hand and post-petition proceeds of accounts receivable. Specifically, without the use of said cash collateral, Debtor cannot maintain its business, nor can Debtor pay the wages, salaries, rent, utilities and other expenses associated with operating its business.

14. Based upon the foregoing, it is evident that the consequences of leaving Debtor without use of cash collected would have a materially adverse affect on the estate and its creditors. Without immediate access to cash collateral, Debtor's business operations will be

4

Case 10-01342    Doc 17    Filed 03/30/10    Entered 03/30/10 09:12:03    Desc Main
                  Document      Page 4 of 13

terminated. Debtor will be neither able to maintain its business, nor will it be able to employ the staff necessary to operate its facilities or to pay its utilities and other expenses.

15. Debtor has determined, in the exercise of its sound business judgment, that it requires use of Lender's cash collateral in the specific amounts in the budget detailed on **Exhibit "A"** attached and incorporated by reference for all purposes. The cash flow budget reflects the specific uses to which the funds will be put for the period through April 23, 2010.

16. <u>Relief Requested</u>. By this Motion, Debtor requests, pursuant to § 363(c)(2) of the Bankruptcy Code, that this Court enter an order authorizing Debtor to use cash collateral of Lender in the specific amounts set forth in **Exhibit "A"**. In an effort to adequately protect the interests of Lender in the Prepetition Collateral for Debtor's use of cash collateral as requested in this Motion, Debtor is offering to provide Lender with replacement liens pursuant to and in accordance with 11 U.S.C. § 361(2), in and to all property of the estate of the kind presently securing the indebtedness owing to Lender (the "Postpetition Collateral") purchased or acquired with the cash collateral of Lender.

17. Section 363(c)(2) of the Bankruptcy Code provides that:

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless— . . .

(B) the court, after notice and hearing, authorizes said use, sale or lease in accordance with the provisions of this Section . . . .

11 U.S.C. § 363(c)(2). Section 363(e) provides that the Court may condition said use, sale or lease as is necessary to provide adequate protection to Lender.

18. Based upon the foregoing, this Court is authorized to grant the interim relief requested in this Motion and to authorize and approve the use of cash collateral by Debtor.

5

Case 10-01342    Doc 17    Filed 03/30/10    Entered 03/30/10 09:12:03    Desc Main
Document    Page 5 of 13

19. <u>Adequate Protection of Lender</u>. Debtor herein provides sufficient adequate protection of the interests of Lender. Debtor therefore requests that this Court enter the Proposed Order allowing the use of cash collateral through April 23, 2010.

20. To adequately protect Lender, Debtor is also offering:

(i) To grant Lender a valid first priority security interest and replacement lien in all of Debtor's post-petition assets, including without limitation, accounts receivable, materials, inventory and equipment, as well as the products and proceeds thereof;

(ii) To make adequate protection payments to Lender in the amounts set forth on **Exhibit "A"** as if no event of default had occurred; and

(iii) To provide financial information to Lender on a regular basis as reasonably requested by Lender.

21. <u>Approval of the Proposed Order is in the Best Interests of Debtor its Creditors and the Estate</u>. Debtor believes that the terms and conditions of the Proposed Order are fair and reasonable.

22. Because substantially all of Debtor's assets are already encumbered with the liens granted to Lender to secure advances made prior to the Petition Date, Debtor is unable to obtain, in the ordinary course of business or otherwise, unsecured credit allowable pursuant to section 503(b)(1) of the Bankruptcy Code as an administrative expense in an amount necessary for the maintenance and preservation of its assets and operation of its business on more advantageous economic and non-economic terms than those offered herein.

23. Approval of this Motion is in the best interests of Debtor, its estate and creditors and will enable Debtor among other things, to: (i) pay employees and trade creditors; (ii)

maintain continuity of operations; and (iii) maximize the value of the business and properties. In addition, the availability of funds pursuant to this Motion will instill confidence in the creditors of Debtor which will facilitate a smooth transition into Chapter 11 and orderly liquidation of Debtor's assets.

24. Moreover, Debtor submits that the use of cash collateral contemplated by this Motion is appropriate and proper under the facts herein. A substantial portion of the amounts on deposit in all of Debtor's banking, checking and other deposit accounts and all accounts receivable are all alleged by Lender to constitute cash collateral within the meaning of section 363 of the Bankruptcy Code. As indicated above, Debtor cannot operate post-petition without the use of its prepetition cash and accounts receivable.

25. Based upon the foregoing, Debtor urges the Court to approve this Motion, thereby authorizing Debtor to use cash collateral and incur the secured obligations as provided therein.

26. <u>Notice and Final Hearing</u>. No trustee, examiner or creditors' committee has been appointed in this Chapter 11 case. Notice of this Motion has been given to the United States Bankruptcy Administrator, counsel for Lender, and Debtor's twenty largest creditors and their counsel, if known. Debtor submits that such notice is appropriate and sufficient in light of Debtor's imminent and urgent need for working capital.

27. Pursuant to Bankruptcy Rule 4001, Debtor respectfully requests that this Court schedule a final hearing on the relief sought in this Motion. Debtor further requests that it be authorized to provide notice of the final hearing by serving a copy of the Motion upon: (i) the United States Bankruptcy Administrator; (ii) counsel for Lender; (iii) any other party which has filed a request for special notice with this Court and served such request on Debtor's counsel;

(iv) the list of Debtor's twenty largest unsecured creditors included on the list filed by Debtor pursuant to Rule 1007; and (v) such taxing authorities as may hold any claim against Debtor.

28. <u>No Prior Request</u>. No previous request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, Debtor respectfully requests that this Court enter an Order, which among other things:

1. Authorizes Debtor to use the cash collateral of Lender on the terms and conditions set forth herein;

2. Sets the last time and date for the filing of objections to approval of this Motion on a final basis;

3. If an objection to the approval of this Motion on a final basis is filed, sets a hearing to consider approving this Motion on a final basis pursuant to Bankruptcy Rule 4001; and

4. After the final hearing enter a final order authorizing Debtor to utilize the cash collateral in accordance with the terms and subject to the provisions herein; and

5. Grant such other and further relief as is just and proper.

/s/ Lawrence B. Voit
Lawrence B. Voit     VOI001

/s/ Alexandra K. Garrett
Alexandra K. Garrett   KAT007
SILVER, VOIT & THOMPSON,
Attorneys at Law, P.C.
4317-A Midmost Drive
Mobile, Alabama 36609-5589
Telephone: 251/343-0800
Fax: 251/343-0862
Email: lvoit@silvervoit.com
LS-7873-13563/lmm

Attorneys for Debtors Dunhill Entities, L.P.; Dunhill Entities GP, LLC; Dunhill Terminals, L.P.; and Dunhill Terminals GP, LLC

## CERTIFICATE OF SERVICE

I, Alexandra K. Garrett, do hereby certify that I have served a copy of the foregoing pleading upon the below people via fax and/or e-mail, on this the 29th day of March, 2010:

A&M Portables, Inc.
Fax No. (251) 679-1930

A & H Boiler Sales and Service
Fax No. (251) 937-0599

Ace Fabricators
Fax No. (251) 580-3692

Ace Paint Maintenance, Inc.
Fax No. (251) 580-3692

AL Dept of Industrial Relation
Fax No. (251) 461-4178

Al Hill's Boiler Sales
Fax No. (251) 653-0362

Alabama Power
Fax No. (251) 694-2391

American International Company
Fax No. (212) 785-9495

Aquaterra
Fax No. (225) 344-6346

Arc Terminals LP
Fax No. (212) 888-2854

AT&T
Fax No. (713) 567-1233

Briggs Equipment
Fax No. (251) 456-5700

City of Mobile Revenue Dept.
Fax No. (334) 208-7511

Driven Engineering
Fax No. (251) 645-0971

Evans Leroy and Hackett, PLLC
info@elhlaw.com

Evergreen Tank Solutions
Luther.Newberry@evergreentank.com

Express Scripts
Fax No. (888) 802-4278

Franklin, Cardwell & Jones, P.C.
Fax No. (713) 222-0938

Freeman Security Company
Frederickfreeman54@yahoo.com

G&K Services
akweb@gkservices.com

Golden Railroad Const. Inc.
Fax No. (850) 215-3111

Graherne, Inc.
Fax No. (713) 753-7177

Gulf Atlantic Capital
Fax No. (813) 288-8263

Gulf Supply Co. Inc.
Fax No. (251) 457-4606

H&H Electric Co., Inc.
Fax No. (251) 675-5497

Heggeman Realty Company
Fax No. (251) 479-8630

IREC
Fax No. (203) 984-3487

IRS
Charles.Baer@usdoj.gov

Jackson Key and Associates, LL
Fax No. (251) 432-9319

Kentwood Springs
Fax No. (770) 965-4580

Lincoln National Life Ins
Fax No. (402) 361-1330

Marilyn E. Wood
Fax No. (251) 574-4714
Fax No. (251) 574-5529

MBM Advisors, Inc.
Fax No. (713) 228-3448

McGinnis & Associates, Inc.
Fax No. (251) 341-5047

Mobile Area Water and Sewer
Fax No. (694-3448

Mobile Gas
Fax No. (251) 450-5704

Mod Space
Fax No. (610) 771-4125

Nature's Way
Fax No. (713) 443-5867
Fax No. (251) 443-5867

Nature's Way Marine, LLC
Fax No. (257) 443-5867

PAETEC
Fax No. (585) 340-2801

Pitney Bowes Inc.
Fax No. (800) 882-2499

Rain for Rent
Fax No. (661) 393-6897

Safe Rack
Fax No. (803) 774-7233

Seyfarth Shaw LLP
Fax No. (713) 821-0674

Smart Choice Office Supply
Fax No. (251) 665-7374

Smith Industrial Service
Fax No. (251) 473-6315

State of Alabama Dept. of Revenue
Fax No. (334) 242-8915

Sunbelt Rentals
Fax No. (251) 408-0804

Tax Trust Account
Fax No. (334) 208-7511

Terminal Railway
JSims@asdd.com

Travis Bedsole, Bankruptcy Administrator
Fax No. (251) 441-6263

Wade Office Products
Fax No. (251) 666-3339

Weeks Marine
Fax No. (908) 272-4740

YMCA of South Alabama
Fax No. (251) 438-1174

/s/ Alexandra K. Garrett
Alexandra K. Garrett

# Dunhill Terminals
# Cash Budget

(Whole US$)

| | | POSTPETITION | | | |
|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 |
| Week Ended | | 2-Apr | 9-Apr | 16-Apr | 23-Apr |
| Beginning Cash Balance | $ | 402,200 | 189,906 | 278,111 | 217,354 |
| Cash Collections | | - | 164,880 | 96,802 | - |
| **Cash Disbursements:** | | | | | |
| **Operating Cash Disbursements** | | | | | |
| Payroll & Benefits | | 48,515 | 5,022 | 46,715 | 3,462 |
| Rent - Office | | 1,250 | - | - | - |
| Rent - Valero Concession | | 6,000 | - | - | - |
| Insurance - Commercial Marine Liability (Camden Pre Fin) | | - | - | - | - |
| Insurance - Vehicles, hired non owned | | - | - | 700 | - |
| Insurance - Property | | - | 21,500 | - | - |
| Insurance - US Longshore & Harbor Workers/Marine Excess | | 3,539 | - | - | - |
| Insurance - Umbrella, Bumpershoot | | 2,083 | - | - | - |
| Insurance - Bumbershoot | | 2,813 | - | - | - |
| Insurance Credit Insurance | | 1,100 | - | - | - |
| Insurance - Workers Compensation | | 4,321 | - | - | - |
| Utilities - Alabama Gas | | 15,000.0 | - | - | - |
| Telecommunications - Internet / Phone / Cable & Equipment | | 2,000 | 2,000 | 250 | - |
| Cell Phone | | - | - | - | - |
| Tank Heating - Mobile Gas (Customer Pass Thru) | | 15,000 | - | - | 60,000 |
| Terminal Railway (Customer Pass Thru) | | 7,500 | 7,500 | 35,000 | - |
| General Maintenance | | 5,000 | - | 7,500 | 7,500 |
| Operating Expenses / Equipment Rentals | | 10,000 | - | - | - |
| Tank Cleaning Expense | | 1,850 | 1,850 | - | - |
| Other Office Expenses | | 41,000 | - | 1,850 | 1,850 |
| Utility Deposits | | - | - | - | - |
| Property Taxes | | 8,000 | 8,000 | 8,000 | 8,000 |
| Security | | - | - | - | - |
| Bank Charges | | 25 | 25 | 25 | 25 |
| Total Operating Cash Disbursements | | 174,996 | 45,897 | 100,040 | 80,837 |
| **Sale Related Expenses** | | | | | |
| As-Built Surveys | | - | - | 7,500 | - |
| Title Insurance | | - | - | 20,000 | - |
| Tank Gauging and Sampling (1/2 of total cost) | | - | - | - | - |
| Total Sale Related Expenses | | - | - | 27,500 | - |
| **Professional Fees** | | | | | |
| Silver, Voit & Thompson | | - | - | - | - |
| Seyfarth Shaw | | - | - | - | - |
| Creditor's Committee Professional Fees | | - | - | - | - |

| | | | | |
|---|---:|---:|---:|---:|
| Operating Manager | 6,000 | 6,000 | 6,000 | 6,000 |
| Accounting Services | 17,500 | 17,500 | 17,500 | 17,500 |
| Gulf Atlantic Capital | 5,000 | 5,000 | 5,000 | 5,000 |
| Dunhill Products Consulting | 3,798 | 2,279 | 1,519 | 1,063 |
| Third Party Noticing Agent | 5,000 | - | - | - |
| Bankruptcy Administrator Fees | - | - | - | - |
| Total Professional Fees | 37,298 | 30,779 | 30,019 | 29,563 |
| **Operating Cash Flow** | **189,906** | **88,204** | **(60,757)** | **(110,401)** |
| Total Cash Disbursements | 212,294 | 76,676 | 157,559 | 110,401 |
| **Ending Cash Balance** | **$ 189,906** | **$ 278,111** | **$ 217,354** | **$ 106,953** |