# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF ALABAMA

In re:                                          Chapter 11

DUNHILL ENTITIES, L.P., *et al.*               Bankruptcy  Case No. 10-01342

          Debtors.                     Chapter 11

                                      JOINTLY ADMINISTERED

## ORDER UNDER SECTIONS 105(a), 363 AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004 AND 6006 APPROVING THE SALE OF SUSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

This matter came before the Court upon the *Motion Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006 for (I) an Order (A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets and (B) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (C) Establishing Procedures for the Assumption and Assignment of Executory Contracts and Leases; and (II) an Order (A) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Authorizing the Assumption and Assignment of Executory Contracts and Leases; and (C) Granting Related Relief* of the debtors and debtors-in-possession[1] (collectively, the "Debtors") with respect to the Debtors' request for an order approving the sale of substantially all of its assets free and clear of liens, claims, encumbrances, and other interests and authorizing the assumption and assignment of certain

---

[1] The Debtors are Dunhill Entities, L.P., Dunhill Entities GP, LLC, Dunhill Terminals, L.P., and Dunhill Terminals GP, LLC.

executory contracts and leases (the "Sale Motion").[2]  After due consideration of the Sale Motion, and in accordance with the *Order Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets and (B) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (C) Establishing Procedures for the Assumption and Assignment of Executory Contracts and Leases* ("Bidding Procedures Order," Dkt. No. 77); and it appearing that proper and adequate notice of the Sale Motion has been given and that no other or further notice need be given; and a hearing on the Sale Motion having been held before this Court on May 18, 2010 (the "Sale Hearing"); and upon the record of the Sale Hearing; and due deliberations having been had; and sufficient cause appearing therefor; it is hereby

**FOUND AND DETERMINED THAT:**

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334 and this matter is a core proceeding under 28 U.S.C. §157(b)(2)(A), (N) and (O).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The statutory predicates for the relief requested in the Sale Motion are section 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

C.      Good and sufficient notice of the relief sought in the Sale Motion has been given.  No other or further notice of the request for the relief granted herein need be given.

D.      A reasonable opportunity to object or to be heard with respect to the Sale Motion, the Sale Hearing, the sale of the Assets, the assumption and assignment of the

---

[2] Capitalized terms not otherwise defined herein shall have the meaning assigned to them in the Motion.

Case 10-01342   Doc 142   Filed 05/25/10   Entered 05/25/10 11:45:18   Desc Main
Document      Page 2 of 19

Assigned Contracts, and the transactions contemplated therein has been afforded to all interested parties in accordance with the Bankruptcy Rules and Local Rules, and with the notice procedures required by the Bidding Procedures Order, including upon (i) substantially all potential purchasers previously identified or solicited by Debtors during their prepetition sale efforts and any additional parties who have previously expressed an interest in potentially acquiring the Assets at any time; (ii) all other potentially interested parties identified by Debtors in their business judgment as a potential purchaser; (iii) the Office of the United States Bankruptcy Administrator; (iv) counsel for the Proposed Purchaser; (v) all parties who are known to possess or assert a lien, claim, encumbrance or interest in or upon any of the Assets; (vi) any applicable federal, state and local regulatory or taxing authority, recording office or any governmental entity which has a reasonably known interest in the relief requested in the Motion; (vii) all counterparties to executory contracts and unexpired leases identified in the APA for assumption and assignment,[3] and (viii) all parties on the most current master service list and mailing matrix filed in the Bankruptcy Cases (the "Assumption Notice Parties"). Such notice constitutes appropriate and adequate notice to all parties and is in compliance with Bankruptcy Rules 2002, 6004, 6006 and 9014. No other or further notice of the Sale Motion, the Sale Hearing, the sale of the Assets, the assumption and assignment of the Assigned Contracts, and the transactions contemplated is necessary or required.

      E.      The Debtors have marketed the Assets diligently, in good faith and in a commercially reasonable manner to secure the highest and best offer or offers therefor.

---

[3] The inclusion of any document on the list of contracts to be assumed and assigned shall not constitute or be deemed to be a determination or admission by the Debtors or the Proposed Purchaser that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

A reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Assets.

F.    The Proposed Purchaser, Arc Terminals LP, has been identified as the Prevailing Bidder for the Assets.

G.    The Bidding Procedures afforded a full, fair and reasonable opportunity for any entity to make a higher and better offer to purchase the Assets and no higher or better offer than that of the Proposed Purchaser has been made.

H.    The Debtors and Proposed Purchaser have complied with the Bidding Procedures Order in all respects.

I.    The Debtors are the lawful owners of the Assets.

J.    The purchase price of $40,500,000 (the "Purchase Price") for the Assets, comprised of a credit bid amount of $40,000,000 and a cash amount of $500,000 (the "Cash Proceeds") plus assumption of the Assumed Liabilities, is fair and reasonable, and constitutes fair consideration and reasonably equivalent value under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and all other applicable laws of the United States, any state, territory, possession, or the District of Columbia.  Approval of the Asset Purchase Agreement, as amended or modified, by and between the Debtors and Arc Terminals LP dated as of March 10, 2010 ("APA," a copy of which is attached hereto as **Exhibit "A"**), the sale of the Assets and the assumption and assignment of the Assigned Contracts, in accordance with the APA, are in the best interests of the Debtors, their respective creditors and estates, and other parties in interest.  A valid and sound business purposes exists for approval of the transactions contemplated by the Sale Motion pursuant to Bankruptcy Code § 363(b).

The terms of the APA were negotiated at arms-length, in good faith, and are fair and reasonable.

K.     The APA contemplates that the sale of the Assets shall be free and clear of all liens, claims and encumbrances except for the Permitted Encumbrances (as defined in the APA) and as otherwise provided in the APA.

L.     In accordance with the APA, the Debtors are authorized and directed to sell and transfer the Assets free and clear of all liens, claims and encumbrances because, as required by Bankruptcy Code § 363(f):  (a) applicable non-bankruptcy law permits the sale; (b) the party holding such lien or other encumbrance has consented to the sale; (c) the interest is a lien and the Purchase Price is greater than the aggregate value of all liens on the Assets; (d) any lien or interest is in bona fide dispute; or (e) all parties asserting a lien on the Assets could be compelled to accept a money satisfaction of such liens in a legal or equitable proceeding pertaining thereto.

M.     The APA, including all documents ancillary thereto, was negotiated, proposed and entered into by the parties in good faith, from arm's-length bargaining positions and without collusion.  The Proposed Purchaser was not an "insider" or "affiliate" of the Debtors (as each such term is defined in the Bankruptcy Code).  Neither the Debtors nor the Proposed Purchaser have engaged in any conduct that would prevent the application of Bankruptcy Code § 363(m) or cause or permit the application of Bankruptcy Code § 363(n) to the proposed sale and the transactions contemplated by the APA.  The Proposed Purchaser is a good faith buyer under Bankruptcy Code § 363(m) and, as such, is entitled to the protections afforded thereby.

N.     Except as otherwise set forth in this Order, the Proposed Purchaser has agreed to assume the Assigned Contracts. The Assigned Contracts are property of the Debtors' estates pursuant to § 541(a) of the Bankruptcy Code.

O.     With respect to the Assigned Contracts: (a) there are no defaults under such Assigned Contracts and, as such, there are no sums due or owing on account of the Assigned Contracts under Bankruptcy Code §§ 365(b) or 365(f), including, without limitation, no amounts are necessary to cure any defaults or to pay any actual or pecuniary losses, or (b), to the extent there are defaults or sums due or owing on account of the Assigned Contracts, any and all amounts necessary to cure any defaults or to pay any actual or pecuniary losses will be paid by the Debtors.

P.     Upon entry of this Order, (i) the Debtors have all the corporate power and authority necessary to consummate the transactions contemplated by the APA, and (ii) no consents or approvals, other than those expressly provided for in the APA, are required for the Debtors to consummate such transactions.

Q.     The transactions contemplated by the APA will, upon consummation thereof, (i) be a legal, valid and effective transfer of the Assets to the Proposed Purchaser with no further action required on the part of the Debtors and (ii) vest the Proposed Purchaser with good title to the Assets free and clear of all liens, claims and interests, except for the Permitted Encumbrances and as otherwise provided in the APA and this Order. In particular, the Proposed Purchaser would not have entered into the APA if the sale of the Assets and the assignment of the Assigned Contracts were not free and clear of any claim based on the theory of successor or transferee liability.

R.     Except as otherwise provided in this Order, no consents or approvals, other than this Order and those expressly provided for in the APA, are required for the Debtors to consummate the transactions contemplated by the APA.

S.     Except as otherwise provided in the APA and this Order, consummation of the transactions will not subject the Proposed Purchaser to any debts, liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, of or against the Debtors, any affiliate of the Debtors, or any other person by reason of such transfers and assignments, including, without limitation, based on any theory of antitrust, successor or transferee liability.

T.     To the extent that the Assets constitute all or substantially all of the assets of any of the Debtors, substantial and sufficient exigencies exist that permit the Assets to be sold outside of the context of a plan of reorganization.

U.     Consummation of the APA does not effect a de facto merger of any of the Debtors and the Proposed Purchaser or result in the continuation of any of the Debtors' businesses under the Proposed Purchaser's control.  The Proposed Purchaser is neither the alter ego of nor a successor-in-interest to any of the Debtors, nor is the Proposed Purchaser otherwise liable for any of Debtors' debts and obligations, except to the extent otherwise provided for in the APA.

V.     All findings of fact and conclusions of law made or announced by the Court at the Sale Hearing are incorporated herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

Case 10-01342    Doc 142    Filed 05/25/10    Entered 05/25/10 11:45:18    Desc Main
Document      Page 7 of 19

1. The findings of fact entered above and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any finding of fact shall later be determined to be a conclusion of law, it shall be so deemed, and to the extent that any conclusion of law shall later be determined to be a finding of fact, it shall be so deemed.

2. The Sale Motion is hereby **GRANTED** in its entirety.

3. All parties in interest have had the opportunity to object to the relief requested in the Sale Motion and all objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, including all reservations of rights included therein which are not otherwise provided for by this Order are overruled on the merits and in their entirety. The parties who did not object, or who withdrew their objections, to the Sale Motion are deemed to have consented pursuant to § 363(f)(2) of the Bankruptcy Code.

4. The terms and conditions of the APA are hereby approved in their entirety and are binding upon the parties thereto. Upon entry of this Order, the covenants contained in the APA, to the extent (if any) not already enforceable by their terms, shall be fully enforceable by the parties to the APA in accordance with and subject to the terms and conditions of the APA, effective retroactive to the execution date of the APA.

5. The sale of the Assets to the Proposed Purchaser pursuant to the APA is hereby authorized and approved under Bankruptcy Code §§ 105(a) and 363(b) and (f).

6. The Debtors are authorized and directed to execute, deliver, perform fully under, consummate, and implement, the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement such agreements, and to take all

further actions as may be reasonably requested by the Proposed Purchaser for the purpose of assigning, transferring, and conferring to the Proposed Purchaser, or reducing to possession, any or all of the Assets, or as may be necessary or appropriate to the performance of the obligations of the Debtors under the APA, including effectuating non-material amendments to the APA in furtherance thereof.

7.      Pursuant to Bankruptcy Code §§ 105(a), 363(b) and 363(f), of the Bankruptcy Code, the Assets, except as otherwise provided in this Order, shall be transferred to the Proposed Purchaser, in accordance with and to the extent provided in the APA, free and clear of all mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens (including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of redemption, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, or tax, decrees of any Court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, of any of the Debtors or their predecessors or affiliates, claims (as that term is defined in the Bankruptcy Code), reclamation claims, obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-

contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability, except for the Permitted Encumbrances and as otherwise set forth in the APA and this Order; *provided, however*, that the purported lien of Smith Tank & Steel, Inc. ("Smith Tank") shall remain on the Debtors' property until such time that the Effective Date Payment is made to Smith Tank pursuant to that certain Service Agreement between Smith Tank and Arc Terminals, LP, and upon such payment, any lien of Smith Tank arising on or before the Closing Date shall be extinguished and Smith Tank's future lien rights shall be governed by Alabama law. If the proposed sale fails to close for any reason, then all of such liens, claims, interests, obligations, demands, guarantees, options, rights, contractual commitments, encumbrances and restrictions, shall continue against the Assets unaffected by this Order.

8.    All taxes owed by the Debtors to the Mobile County, Alabama Revenue Commissioner for the full year 2009 and for the year 2010, up to the date of Closing, shall be paid by the Debtors out of the Cash Proceeds at Closing. Buyer will be liable for its pro rata portion of the 2010 taxes, and the statutory lien of the Revenue Commissioner shall remain on the property sold to the extent of said balance.

9.    From the cash sale proceeds payable to the Debtors, Debtors shall, at Closing, place $4,875.00 in the escrow account of their bankruptcy counsel for payment of the Bankruptcy Administrator's Chapter 11 Quarterly Fee.

10.    Except as expressly provided in the APA, all persons or entities holding liens, claims and interests in, to, or against the Assets shall be, and they hereby are, forever barred and

estopped from asserting such liens, claims and interests against the Proposed Purchaser, its successors and assigns, the Debtors, or the Assets.

11.     All Assigned Contracts subject to the Sale Motion are in full force and effect and have not been terminated by operation of law, their own terms or otherwise.

12.     Subject to the notice procedures required with regard to the Assigned Contracts, the Assigned Contracts, other than the Excluded Contracts, defined below, are assumed by the Debtors as of the closing of the sale pursuant to Bankruptcy Code § 365 and assigned to the Proposed Purchaser, notwithstanding any provision in any such Assigned Contract (including those of the type described in §§ 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.  Any provision in any Assigned Contract that prohibits or conditions the assignment of such Assigned Contract or allows the party to such Assigned Contract to terminate, recapture, impose any penalty, condition, renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, constitutes an unenforceable anti-assignment provision which is void and of no force or effect.  Accordingly, (a) the Assigned Contracts may be assumed by the Debtors and assigned to the Proposed Purchaser on the Closing Date (as defined in the APA); (b) the applicable cure amount shall be fixed at the amount set forth on **Exhibit "B"** attached hereto, notwithstanding anything to the contrary in any Assigned Contract or any other document; and (c) each Assumption Notice Party is hereby (i) deemed to have waived and released any right to assert an objection to the proposed assumption and assignment of the Assigned Contract and/or the cure amount with respect thereto, and to have otherwise consented to the assumption and assignment of the applicable Assigned Contract, and (ii) upon the payment of the applicable cure amount, if any, forever barred, permanently enjoined and estopped from asserting or claiming any other or further

claims against the Debtors, their estates, the Proposed Purchaser, their respective successors and assigns, the Assets, or the property or assets of any or all such parties, with respect to such Assigned Contract or on grounds that any additional amounts are due or defaults exist, or conditions to assignment must be satisfied, under such Assigned Contract, except for claims or defaults occurring wholly after the Closing Date.

13.    For purposes of this Order, "Excluded Contracts" shall be defined as: (a) that certain lease agreement by and between Dunhill Entities, LP as landlord and Valero Marketing and Supply Company as tenant, made effective as of December 29, 2006, (b) that certain sublease agreement by and between Dunhill Entities, LP as landlord and Valero Marketing and Supply Company as tenant, made effective as of January 27, 2009, and (c) that certain Schedule to the Master Storage Agreement between the Dunhill Terminals, L.P. and MeadWestvaco South Carolina, LLC ("MWV") relating to Tank 30-06 (the "Tank 6 Contract"). The Tank 6 Contract shall be deemed properly rejected under Bankruptcy Code § 365 and Bankruptcy Rule 6006 as of the entry of this Order.

14.    Furthermore, the $18,000 deposit associated with the Tank 6 Contract, as referenced in Section 1.01(a)(v) and (vii) and Schedule 1.01(a)(vii) of the APA (the "Tank 6 Deposit"), shall not be sold or otherwise transferred to the Proposed Purchaser and shall not be deemed an "Asset" for the purposes of this Order or the APA, but shall, as liquidated damages associated with the rejection of the Tank 6 Contract, secure MWV's claim for rejection damages associated with the rejection of the Tank 6 Contract. Neither the Debtors nor the Proposed Purchaser shall have any claim to the Tank 6 Deposit, which the Debtor is authorized and directed to pay to MWV to reduce MWV's rejection damages claim.

15.     There shall be no assignment fees, fee increases or any other fees charged to the Proposed Purchaser, the Debtors or the Debtors' estates as a result of the assumption and assignment of the Assigned Contracts.  The Assigned Contracts, upon assignment to Proposed Purchaser, shall be deemed valid and binding, in full force and effect in accordance with their terms; except that, nothwithstanding any language in the APA or this Order to the contrary, the Schedule to the Master Storage Agreement between Dunhill Terminals, L.P. and MWV relating to Tank 30-03 (the "Tank 3 Contract") shall be amended to conform to the terms of the agreement between the Proposed Purchaser and MWV resolving MWV's objection to the Sale Motion, as presented to the Court on the record at the Sale Hearing.  The amended terms of the Tank 3 Contract shall be reduced to writing by the Proposed Purchaser and MWV after the Closing Date.

16.     To the extent there are no payments necessary under Bankruptcy Code §§ 365(b)(1) or 365(f)(2), the Debtors have satisfied the requirements of Bankruptcy Code §§ 365(b)(1) and Bankruptcy Code § 365(f)(2).  Alternatively, to the extent there are defaults or sums due or owing on account of the Assigned Contracts, any and all amounts necessary to cure any defaults or to pay any actual or pecuniary losses will be paid by the Debtors out of the Cash Proceeds at the Closing of the sale.

17.     The Proposed Purchaser has provided adequate assurance of its future performance under the Assigned Contracts being assigned to it within the meaning of Bankruptcy Code §§ 365(b)(1)(C) and (f)(2)(B).

18.     Each non-Debtor party to an Assigned Contract is hereby forever barred and estopped from (i) asserting against the Debtors or the Proposed Purchaser, their respective affiliates, successors, and assigns, or the property of any of them, any default arising prior to or

existing as of the Closing Date or, as against the Proposed Purchaser, any claim (including any counterclaim, defense, setoff or any other obligation) asserted or assertable against the Debtors as of the Closing Date; and (ii) imposing or charging against the Proposed Purchaser or any of its affiliates any assignment fees, fee increases or any other fees as a result of the Debtors' assumption and assignment to the Proposed Purchaser of the Assigned Contracts. The validity and enforceability of such assumption and assignment of the Assigned Contracts shall not be affected by any dispute between Debtors and any non-Debtor party to an Assigned Contract.

19.     The failure of the Debtors or the Proposed Purchaser to enforce any term or condition of any Assigned Contract shall not constitute a waiver of such term or condition of the Debtors' or the Proposed Purchaser's rights to enforce every term and condition of the Assigned Contracts.

20.     The Proposed Purchaser is not a successor to the Debtors or their respective estates by reason of any theory of law or equity and the Proposed Purchaser shall not assume any liability or obligation of the Debtors, fixed or contingent, disclosed or undisclosed, or any liability for any liens, causes of action, claims (including, without limitation, claims arising or sounding in tort, environmental claims and claims of taxing authorities all to the fullest extent allowed by applicable law), pending or threatened litigation, security interests, warranties, and interests of any kind, known or unknown, liquidated or unliquidated, whether now existing or arising in the future, debts of any kind or nature, all of which, if any, are retained by Debtors, except as otherwise expressly provided in the APA and this Order.

21.     Except as expressly permitted or otherwise specifically provided by the APA or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade and other creditors,

holding interests of any kind or nature whatsoever against or in the Debtors or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, the ownership or operation of the Assets prior to the closing of the sale, or the sale of the Assets are forever barred, estopped, and permanently enjoined from asserting against Proposed Purchaser, its successors or assigns, its property, or the Assets, such persons' or entities' interests.

22.     The transfer of the Assets to the Proposed Purchaser and the related transactions to be consummated in accordance with the APA constitute good faith transactions entitled to the protections afforded by section 363(m) of the Bankruptcy Code in the event of a reversal or modification on appeal of any or all of the provisions of this Order.

23.     The consideration provided by Proposed Purchaser for the Assets under the APA (a) shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and all other applicable the laws of the United States, any state, territory, possession or the District of Columbia, and (b) is fair and reasonable, and the sale of the Assets and the related transactions may not be avoided under section 363(n) of the Bankruptcy Code.

24.     Until these Cases are closed or dismissed, this Court retains exclusive jurisdiction:  (i) to enforce and implement the terms and provisions of the APA, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith; (ii) to compel delivery of the Assets to the Proposed Purchaser; (iii) to resolve any disputes arising under or related to the APA and related agreements, except as otherwise provided therein; (iv) to enjoin the assertion of any claims, liens, interests or

encumbrances against the Proposed Purchaser or the Assets, and (v) to interpret, implement and enforce the provisions of this Order.

25. The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court.

26. Notwithstanding Bankruptcy Rule 6004(h) or Bankruptcy Rule 6006(d), this Order shall be effective and enforceable immediately upon entry.

27. Except with respect to enforcing the terms of the APA and/or this Order, absent a stay pending appeal, no person shall take any action to prevent, enjoin or otherwise interfere with consummation of the transactions contemplated in or by the APA or this Order or with the Proposed Purchaser's title to or use and enjoyment of the Assets.

28. The Debtors or the Proposed Purchaser and any agent or representative of either of them, are each hereby authorized and empowered to serve upon all filing and recording officers a notice when filing or recording any instruments of transfer (including, without limitation, licenses, deeds, leases, and assignments, modifications and terminations of leases) in accordance with this Order and the APA to evidence and implement this paragraph of this Order. All filing and recording officers are hereby directed to accept, file and record all instruments of transfer including, without limitation, deeds, leases, and assignments, modifications and terminations of leases (if any) to be filed and recorded pursuant to and in accordance with this Order or the APA and the various documents related thereto. The Court retains jurisdiction to enforce this direction. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system maintained by any recording officer of any federal, state, and local governmental agency or department.

29.    Each and every federal, state, and local governmental agency or department shall be, and hereby is, directed to accept any and all documents and instruments necessary and appropriate to consummate the transaction contemplated by the APA, including, without limitation, documents and instruments for recording in any governmental agency or department required to transfer to the Proposed Purchaser the names and any and all other licenses or permits under the Debtors' ownership necessary for the operations that are associated with the Assets.

30.    The terms and provisions of the APA and this Order shall be binding in all respects upon, and shall inure to the benefit of the Proposed Purchaser, Debtors, Debtors' estates, and their successors and assigns, and any party acting in whole or in part by or through the Proposed Purchaser, Debtors, Debtors' estates or their successors or assigns, including any trustee that may be appointed in these Cases or any superseding cases under Chapter 7 of the Bankruptcy Code. Nothing contained in any chapter 11 plan confirmed in these Cases or the confirmation order confirming any plan shall conflict with or derogate from the provisions of the APA or this Order.

31.    The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order, which may be entered converting Debtors' Chapter 11 Cases to Chapter 7 cases, confirming or consummating any plan(s) of reorganization of Debtors, or dismissing any Debtor's Chapter 11 Case, and the terms and provisions of this Order shall continue in this or any superseding case under the Bankruptcy Code. The obligations of Debtors under this Order or the APA, as applicable, shall not be discharged by the entry of an order confirming a plan(s) of reorganization in any of the Debtors' Chapter 11 Cases. Any order granting conversion or

dismissal or any of the Debtors' Chapter 11 Cases shall specifically provide that this Order shall survive such conversion or dismissal.

32.     The failure to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of that provision, it being the intent of the Court and the parties that all of the provisions of the APA be authorized in their entirety, subject, however, to the specific terms of this Order.

33.     Any conflict between the terms and provisions of this Order and the APA shall be resolved in favor of this Order.

34.     All entities who are in possession of some or all of the Assets on the Closing Date are hereby directed to surrender possession of the Assets to Proposed Purchaser on the Closing Date.

35.     To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Assets sold, transferred or conveyed to the Proposed Purchaser on account of the filing or pendency of these Chapter 11 Cases or the consummation of the sale.

36.     Subject to the fulfillment of the terms and conditions of the APA, as of the Closing Date, this Order shall be considered and constitute for all purposes a full and complete general assignment, conveyance and transfer of the Assets and/or a bill of sale transferring the Debtors' title and interest in the Assets to the Proposed Purchaser, free and clear of all liens, claims and interests except for the Permitted Encumbrances and as otherwise provided in the APA.

37.     Nothing contained in the APA or this Order shall be deemed to constitute any release or exculpation of antitrust or environmental liabilities to the United States, which may

arise under applicable federal statute, subject to any defenses available there under, including, but not limited to 42 U.S.C. Section 9607(r), or any liabilities to the United States that may arise under Title 26, including 26 U.S.C. Sections 3505, 6672, or under any applicable federal criminal statute. In addition, nothing contained in this Order or in the APA shall in any way diminish the obligations of the Debtor to comply with environmental laws consistent with its rights and obligations as debtor in possession under the Bankruptcy Code.

38.     Notwithstanding any provision of this Order to the contrary, any successor liability that may exist solely under federal police power, regulatory or labor laws is not affected by this Order and is not abrogated by the APA or this Order. The parties specifically recognize that any successor liability that may exist under the Uniform Services Employment and Reemployment Act is not affected by the APA or this Order. Nothing in this Order or the APA should be construed to create for any governmental unit any substantive right that does not already exist under law.

39.     The provisions of this Order are nonseverable and mutually dependent.

40.     This Court shall retain exclusive jurisdiction to determine any claims, disputes or causes of action arising out of or relating to this Order, the APA or any of the transactions contemplated under the APA.

Dated:   May 25, 2010

_William S. Shulman_
WILLIAM S. SHULMAN
U.S. BANKRUPTCY JUDGE